BARRY ZISKIN, Plaintiff-Appellant, *v.* THRALL CAR MANUFACTURING COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)    No. 81-0345

Opinion filed April 28, 1982.

Much, Shelist, Freed, Denenberg, Ament & Eiger, of Chicago (Wolf, Popper, Ross, Wolf & Jones, Stephen D. Oestrech, and Ellen Chapnick, all of New York, New York, of counsel), for appellant.

Kurt L. Schultz and Jerome W. Pope, both of Winston & Strawn, of Chicago, for appellee Chamberlain Manufacturing Corporation.

John M. Hartigan and John M. Hillery, both of Carroll, Hartigan & Hillery, Ltd., of Chicago (Lewis A. Kaplan, Jay L. Himes, Harriet L. Goldberg, and Paul, Weiss, Rifkind, Wharton & Garrison, all of New York, New York, of counsel), for other appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

Barry Ziskin (plaintiff) brought this class action against Thrall Car Manufacturing Company (Thrall), Chamberlain Manufacturing Corporation (Chamberlain), and five individual directors of Chamberlain. Plaintiff sought an injunction against a proposed merger between the defendant corporations, which has since been consummated under Iowa law, and damages. Plaintiff's complaint was dismissed for failure to state a cause of action (see Ill. Rev. Stat. 1979, ch. 110, par. 45), and his motion for leave to file an amended complaint was denied. Plaintiff appeals.

In passing upon a motion to dismiss a complaint, all well-pleaded facts are accepted as true. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634.) In addition, the tender offer and other pertinent exhibits were placed in the record as part of memoranda submitted to the trial court by defendants. Counsel for all parties have referred to these documents.

Plaintiff owns 150 shares in Chamberlain. When this litigation was commenced, Chamberlain was an Iowa corporation based in Elmhurst, Illinois. Chamberlain is engaged primarily in the manufacture of electronic items, forged metal, and home improvement products. Chamberlain also produces a component used in the assembly of missile warheads. Thrall is a closely held Delaware corporation based in Chicago Heights, Illinois. Thrall is engaged primarily in the manufacture, repair, and leasing of railroad freight cars.

Commencing in January of 1977 and continuing through April of 1979, Thrall made a series of purchases of Chamberlain stock. By June 30, 1979, Thrall owned 854,360 shares, or approximately 54% of the outstanding shares of Chamberlain. By July 28, 1979, Thrall was able to elect five of the 12 directors of Chamberlain.

In response to an approved plan to reincorporate Chamberlain in Delaware, on August 27, 1979, Thrall announced a tender offer for all outstanding shares of Chamberlain at $30 per share. The tender offer indicated that this price represented a premium of approximately a third over the then current market value, and approximately $4 over the estimated book value, of the Chamberlain stock.

In the statement submitted with its tender offer, Thrall indicated its intention to acquire all Chamberlain stock and the possibility that under a proposed follow-up merger, Chamberlain stock might no longer be traded on the open market, seriously limiting the liquidity and probable value of the stock owned by those shareholders not tendering their shares to Thrall. Thrall also disclosed a joint venture between Chamberlain and Mason & Hange-Silas Mason & Company for the construction of a munitions plant facility. In evaluating the potential profit of this venture, Thrall indicated:

> "In the event of operation at full mobilization base capacity (which operation is unlikely unless there is a war or other major international conflict in which the United States is a participant), the Facility could generate sales in the range of $50,000,000 to $60,000,000 per month. It is estimated that production at the Facility will yield profits to the operator which on average will be at least 4% of sales. It is impossible to predict at what percentage of mobilization base capacity the Facility will operate and hence impossible to predict the profits which will be generated when the Facility becomes operative."

By this tender offer Thrall acquired 94% of all Chamberlain stock it did not previously own. Therefore, by October 19, 1979, Thrall owned 97% of all Chamberlain stock. On February 20, 1980, a Chamberlain shareholders' meeting approved Thrall's proposed follow-up merger whereby remaining Chamberlain shareholders would either tender their stock at the rate of $30 per share or invoke appraisal rights under Iowa corporation law.

In his complaint, plaintiff alleges Thrall and the five directors/defendants engaged in a "plan and scheme" to acquire Chamberlain stock at a deflated price. Plaintiff alleges the defendants purposely obscured the above mentioned joint venture, and limited dividends in order to keep the market value of Chamberlain artificially low, enabling Thrall to tender a low price for the stock. Plaintiff alleges fraud in the limitation of dividends and the nondisclosure of the "potential profitability" of the joint venture. Plaintiff further alleges the tender price was so low as to constitute fraud independently; defendants breached a fiduciary duty to the minority shareholders of Chamberlain; and the tender offer was coercive.

The basis of our evaluation of the instant complaint is found in *Knox*

*College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 421, 430 N.E.2d 976, where the supreme court held:

"Although pleadings are to be liberally construed, and a defendant's motion to dismiss admits all facts well pleaded, nonetheless, in considering a motion to dismiss, the pleadings are to be construed strictly against the pleader."

In addition the court further pointed out (88 Ill. 2d 407, 426-27):

" 'the motion admits facts well pleaded, and conclusions may be proper if based on facts set forth, but the motion does not admit conclusions or inferences by the pleader, such as conclusions of law or of fact unsupported by allegations of specific facts on which the conclusions must rest.' [Citation.]

Notice pleading, as known in some jurisdictions, is not sufficient under our practice act."

In response to plaintiff's attack on the merger and prayer for injunction, defendants reply that section 496A.70 of the pertinent Iowa statute (28 Iowa Code Ann. sec. 496A.70 (West Cum. Supp. 1981-82)), disposes of the common law requirement of unanimous shareholder approval of corporate mergers. Furthermore defendants urge that by specifying only appraisal rights to dissenting shareholders, section 496A.78 (28 Iowa Code Ann. sec. 496A.78 (West 1962)) has established appraisal as plaintiff's exclusive remedy.

We agree that the Iowa act establishes appraisal as the exclusive remedy against a proper corporate merger. Not only is the absence of other specific remedies in the body of the statute significant, we also find *Rath v. Rath Packing Co.* (1965), 257 Iowa 1277, 136 N.W.2d 410, informative. In *Rath*, plaintiffs sought an injunction against a *de facto* merger. While the Iowa Supreme Court reversed the dismissal of plaintiffs' cause of action, the court did not address the general right to injunction but rather concentrated on the right of appraisal. Initially, the court discussed the general rights of appraisal (257 Iowa 1277, 1287, 136 N.W.2d 410, 415):

"At common law no merger could take place without unanimous consent of the stockholders. However, statutes in all jurisdictions now authorize mergers upon a vote of less than all stockholders. A shareholder who dissents to a merger may obtain the value of his stock if the right thereto is provided by statute, if procedure is established therefor and is followed by him. * * *. Sections 496A.77, 496A.78 confer such right and provide such procedure."

Finally, in its mandate to the trial court, the Iowa court again stressed the appraisal rights of dissenting shareholders in event of a merger (257 Iowa 1277, 1292, 136 N.W.2d 410, 418):

"We hold entry of judgment of dismissal on the pleadings was

error, that defendants should be enjoined from carrying out the [*de facto* merger] until such time, if ever, as it is approved by the holders of at least two-thirds of the outstanding shares of Rath and in the event of such approval plaintiffs, if they dissent to such plan and follow the procedure provided by Code section 496A.78, I.C.A., shall be entitled to be paid the fair value of their shares in Rath."

■■ In the case at bar, it is clear that the proposed merger was approved by more than the requisite percentage of shareholders. Therefore, we do not believe plaintiff has a remedy other than appraisal in response to the effectuated merger itself. We find unpersuasive plaintiff's contention that the tender offer which effectuated the merger was coercive. While Thrall did disclose its intention of acquiring 100% of all Chamberlain stock so that trading of the stock might be discontinued, such information would certainly be material to the shareholders, and most probably required by both State and Federal law. See 28 Iowa Code Ann. sec. 502.213(2)(j) (West Cum. Supp. 1981-82); 17 C.F.R. secs. 240.13d-101, item 4(h), 240.14d-100, item 5 (1981).

Apparently, plaintiff is at least partially basing his claim on section 502.402 of the Iowa Corporation Act (28 Iowa Code Ann. sec. 502.402 (West Cum. Supp. 1981-82)):

"It is unlawful for any person who is or was an officer, director or affiliate of an issuer or any other person whose relationship to the issuer or to any of the foregoing persons gives or gave such person access, directly or indirectly, to material information which is of decisive importance about the issuer or the security not generally available to the public, to purchase or sell any security of the issuer in this state at a time when he knows such information about the issuer or the security gained from such relationship, which information

1. Would significantly affect the market price of that security;

2. Is not generally available to the public; and

3. Such person knows is not intended to be so available, unless that person has reason to believe that the other party to such transaction is also in possession of such information."

■■ Regarding application of the above quoted statute and plaintiff's contentions of fraud and breach of fiduciary duty, we believe these arguments are simply different ways of articulating the same basic charge, and would be established by the same evidence. We can assume that at least the directors/defendants have a fiduciary duty to the plaintiff shareholder (see *Holi-Rest, Inc. v. Treloar* (Iowa 1974), 217 N.W.2d 517, 525), and although the issue has apparently not been addressed in Iowa, it is possible that Thrall, as majority shareholder of Chamberlain at the time of

the tender offer, owed a fiduciary duty to the minority shareholders as well. (See *Panter v. Marshall Field & Co.* (N.D. Ill. 1980), 486 F. Supp. 1168, 1193, *aff'd* (7th Cir. 1981), 646 F.2d 271, *cert. denied* (1981), ___ U.S. ___, 70 L. Ed. 2d 631, 102 S. Ct. 658.) Obviously the determination of existence of a fiduciary duty does not establish liability but it does require the fiduciary to act with utmost good faith and to "make full and truthful disclosure of all material facts" regarding the transaction. *Wheeler v. Waller* (Iowa 1972), 197 N.W.2d 585, 588.

Similarly the Iowa statute makes unlawful insider trading based on "material information which is of decisive importance about the issues or the security not generally available to the public." 28 Iowa Code Ann. sec. 502.402 (West Cum. Supp. 1981-82).

■■ Therefore, it appears to us that whether plaintiff's theory is based upon common law fraud or violation of statute, his complaint will be sufficient only if he has alleged facts which would establish the misrepresentation or nondisclosure of material facts which in turn would be decisive with reference to the value of the Chamberlain stock. The mere conclusionary assertion that defendants entered into a "plan and scheme" to defraud is not sufficient. (*Candlewick Lake Utilities Co. v. Quinones* (1980), 82 Ill. App. 3d 98, 101, 402 N.E.2d 369; see also *In re Estate of Lorimor* (Iowa 1974), 216 N.W.2d 349, 353.) In addition, to sustain an action for fraud, the alleged misrepresentation must be of a present or preexisting fact rather than an opinion regarding a future occurrence. *Peterson Industries, Inc. v. Lake View Trust & Savings Bank* (7th Cir. 1978), 584 F.2d 166, 169; *Metropolitan Bank & Trust Co. v. Oliver* (1972), 4 Ill. App. 3d 975, 978, 283 N.E.2d 62; *International Milling Co. v. Gisch* (1965), 258 Iowa 63, 137 N.W.2d 625.

■■ In the case at bar, plaintiff alleges defendants misrepresented the future profitability of the joint venture previously mentioned. However, we do not find any misrepresentation or nondisclosure of a present material fact. The existence of the venture was mentioned in Chamberlain's annual prospectus, though no mention of expected profits was included, and the venture was again fully disclosed and described in Thrall's tender offer. Thrall's representation of the future profitability of the venture can only be categorized as an opinion of a future occurrence which, without more, is not actionable.

Just as Thrall's statement regarding the future profitability of the joint venture cannot be the basis of a cause of action for fraud, neither can it be the basis of a cause of action for stock manipulation or insider trading in connection with the tender offer. "Full factual disclosure need not be embellished with speculative financial predictions." (*Rodman v. Grant Foundation* (2d Cir. 1979), 608 F.2d 64, 72.) In fact, in tender offers " 'presentations of future earnings, appraised asset evaluations and other

hypothetical data \* \* \*'" are "to be discouraged." *Alaska Interstate Co. v. McMillian* (D. Del. 1975), 402 F. Supp. 532, 567, quoting from *Kohn v. American Metal Climax, Inc.* (3d Cir. 1972), 458 F.2d 255, 265, *cert. denied* (1971), 409 U.S. 874, 34 L. Ed. 2d 126, 93 S. Ct. 120.

Nor do we find persuasive plaintiff's contention that defendants conspired to depress the price of Chamberlain stock through the limitation of dividends. First, during the majority ownership of Thrall, the dividend rate of Chamberlain stock actually increased. Chamberlain declared that it intended to maintain its rate of dividends shortly before Thrall initiated its tender offer. Second, only five of the Chamberlain directors were elected by Thrall, and only those five are defendants. Because Chamberlain had a directorate of 12, it follows Thrall could not control a majority of the board of directors and needed acquiescence by independent directors. This fact tends to negate any inference of a conspiracy against the interests of the minority shareholders of Chamberlain.

In effect the charges made by plaintiff concerning fraud, breach of fiduciary duty and stock manipulation constitute the full theory of plaintiff's case. However, aside from the legal problems created by these contentions, it is manifest that plaintiff's complaint fails to set out factual allegations as to the existence of any of these charges. The complaint is replete with allegations of pure conclusions such as that Thrall dominated and controlled the business affairs and actions of Chamberlain; defendants have engaged in a scheme and plan to eliminate plaintiff and other minority shareholders; the tendered price for minority stock was grossly unfair and was grossly and fraudulently inadequate; defendants failed to declare appropriate dividends in order to artificially depress the market price of Chamberlain stock so as to acquire the stock at a price far below its true value, and the tender offer is intended to coerce the minority shareholders.

■■ We find significant that all of plaintiff's allegations revolve around his basic assertion that the tender offer was simply too low. Aside from the general principle that the adequacy of a tender offer should be decided in the market place (*Seaboard World Airlines, Inc. v. Tiger International, Inc.* (2d Cir. 1979), 600 F.2d 355, 361-62), plaintiff has a completely adequate remedy under the Iowa appraisal statute. All the factors which plaintiff alleges make the inherent value of the Chamberlain stock higher than either the tender price or the market price, such as a low dividend rate and the future profitability of the joint venture, can be brought to the attention of the Iowa trial court if it is called upon to make an independent judicial determination of the value of the stock.

■■ Finally we hold the trial court was correct in denying plaintiff's motion for leave to file an amended complaint. From our perusal of the proposed amended complaint, we find the deficiencies outlined above

would not be cured thereby. (See *Kittay v. Allstate Insurance Co.* (1979), 78 Ill. App. 3d 335, 339, 397 N.E.2d 200.) "This ruling by the able trial judge was well within the bounds of reasonable discretion particularly in view of the fact that the proposed * * * amended complaint was not tendered until after final judgment." *Himmelstein v. Valenti Development Corp.* (1982), 103 Ill. App. 3d 911, 916, 431 N.E.2d 1299, citing *In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 171-72, 386 N.E.2d 862.

For the reasons stated above the judgment appealed from is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.