DAVID ROSENSTEIN *et al.*, Indiv. and as representatives of the class of holders of common shares of CMC Real Estate Corporation, *et al.*, Plaintiffs-Appellants, v. CMC REAL ESTATE CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—1584

Opinion filed March 11, 1988.

Richard James Stevens, of Chicago, for appellants.

Jerold S. Solovy, Joan M. Hall, Darryll M. Bradford, and John J. Dunbar, all of Jenner & Block, of Chicago, for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs, David Rosenstein and Beverly Rosenstein, appeal from an order dismissing their complaint against defendants, CMC Real Estate Corporation, Chicago Milwaukee Corporation and CMCRE Merger Corporation, for breach of fiduciary duty. Plaintiffs contend that the court erred in dismissing their complaint.

CMC Real Estate Corporation (CMCREC), formerly the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, recently emerged from reorganization in bankruptcy. Chicago Milwaukee Corporation (CMC), a Delaware corporation, owned 2,092,720 shares of CMCREC's common stock, approximately 96% of all common shares outstanding; 483 other shareholders owned 87,172 shares, approximately 4% of the outstanding 2,179,892 shares. No other class of stock was outstanding. The directors of Chicago Milwaukee Corporation are also directors of CMC Real Estate Corporation.

To achieve various financial, legal and tax objectives, CMCREC and CMC decided that it would be in the best interests of both corporations for CMCREC to become a wholly owned subsidiary of CMC. CMCREC and CMC proposed this change to simplify their corporate structure, to increase their flexibility to plan for the future and to avoid the costs and filing requirements that resulted from the minor-

ity ownership in CMCREC.

To attain these objectives, CMCREC and CMC created CMCRE Merger Corporation (CMCRE), a wholly owned subsidiary of CMC. Pursuant to an "Agreement and Plan of Merger" (Agreement), CMCRE was merged with CMCREC. Following the merger, the surviving corporation, CMCREC, was solely owned by CMC and the minority shareholders in CMCREC exchanged their shares for certain consideration.

Under the Agreement, the minority shareholders were offered $120 in cash, plus a "deferred cash consideration right" for each share they owned, which entitled them to a proportional share of income, net of related taxes and expenses, from property the Regional Transportation Authority (RTA) had condemned in an eminent domain proceeding.[1] Bear, Stearns & Co., Inc. (Bear Stearns), an independent financial advisor, evaluated the transaction and issued an opinion that the consideration paid to minority shareholders was fair. The Agreement advised minority shareholders of their right to a court appraisal of the fair value of their shares under the appraisal provision of the Wisconsin Business Corporation Law (Wis. Stat. Ann. §180.72 (West Supp. 1987)).

CMC's board of directors approved the Agreement after determining that the terms of the merger were fair to minority shareholders. In making that determination, the Board emphasized that Bear Stearns had found that the consideration was fair, that minority shareholders would receive a deferred cash consideration right from the property the RTA had condemned and that the merger would give the minority shareholders the opportunity to take advantage of lower Federal income tax rates on long-term capital gains applicable in 1986.

CMCREC scheduled a special shareholders' meeting for December 29, 1986, to consider the proposed merger. Because CMC favored the Agreement, approval of the merger was assured. Prior to the shareholders' meeting, CMCREC prepared and mailed to the shareholders a proxy statement describing past appraisals of the relevant properties and containing several financial statements. The proxy statement repeatedly advised minority shareholders of their appraisal rights under Wisconsin law.

On December 22, 1986, plaintiffs, owners of five shares of com-

---

[1] Pursuant to a settlement of the condemnation action approved after the merger was effectuated, the value of each "deferred cash consideration right" was approximately $31.

mon stock in CMCREC, filed a class action in the circuit court of Cook County challenging the merger. Plaintiffs alleged that CMC, as a majority shareholder, owed a fiduciary duty to the minority shareholders not to benefit itself or take unfair advantage of the minority shareholders. Plaintiffs alleged further that CMC's approval of the merger constituted a breach of this duty because it was "unfair" to prevent their continued participation in CMCREC as shareholders, the consideration offered for each share was "grossly inadequate," and the right to a judicial determination of the fair value of their shares in a statutory appraisal proceeding was an inadequate remedy in that it was "virtually impossible" to value their shares.

Plaintiffs asked the court to certify the case as a class action and to modify the Agreement to give minority shareholders the right to retain their shares of stock in CMCREC. In the alternative, plaintiffs asked that the payment for each share be increased, that a constructive trust be placed on CMCREC's real estate, that shareholders receive any profits from real estate sales that exceeded the value used in setting the $120-per-share figure, and that CMCREC be enjoined from paying any dividends until the dispute was resolved.

On defendants' motion, plaintiffs' complaint was dismissed without prejudice. The court held that the Wisconsin statutory appraisal procedure was plaintiffs' exclusive remedy because the complaint contained "no allegations of wrongdoing or fraud." The court commented that appraisal was an adequate remedy, particularly in light of plaintiffs' admission in oral argument that the appraisal proceeding was similar "to the appraisal of a private corporation," a task that has "been done by the courts of the land on a fairly regular basis." The court also dismissed the complaint on the ground of *forum non conveniens*, finding "that the proper forum for this matter to be heard would be before the Wisconsin Courts [which] are familiar with the application of their own statutes." Plaintiffs elected to stand on their complaint and appealed the order of dismissal.

OPINION

For purposes of this appeal we assume, without deciding, that Chicago Milwaukee Corporation, as the majority and controlling shareholder of CMC Real Estate Corporation, had a fiduciary duty to the minority shareholders of CMCREC not to use its control of CMCREC to benefit itself at their expense. (See *Ziskin v. Thrall Car Manufacturing Co.* (1982), 106 Ill. App. 3d 482, 486-87, 435 N.E.2d 1227; *Robb v. Eastgate Hotel, Inc.* (1952), 347 Ill. App. 261, 274-76, 106 N.E.2d 848.) Thus, the issue presented is whether the complaint

stated a cause of action for breach of that duty. In our judgment, it did not.

■■ Plaintiffs initially contend that they had a legal right to continue to own stock in CMCREC and that the merger, therefore, was not authorized by Wisconsin law. We disagree.

It is well established that corporations have the power to enter into merger agreements and thereby eliminate minority shareholders. Although at common law, no merger could take place without the unanimous consent of the shareholders, statutes in all jurisdictions now authorize mergers upon a vote of less than all of the shareholders. (*Ziskin v. Thrall Car Manufacturing Co.* (1982), 106 Ill. App. 3d 482, 485, 435 N.E.2d 1227, citing *Rath v. Rath Packing Co.* (1965), 257 Iowa 1277, 1287, 136 N.W.2d 410, 415.) These statutes empower a parent corporation to eliminate minority shareholders and such action, in and of itself, does not constitute breach of a fiduciary duty.

> "[T]he very purpose of the [merger] statute is to provide the parent corporation with a means of eliminating the minority shareholder's interest in the enterprise. Thereafter the former stockholder has only a monetary claim. This power of the parent corporation to eliminate the minority is a complete answer to plaintiff's charge of breach of trust ***." *Stauffer v. Standard Brands, Inc.* (1962), 41 Del. Ch. 7, 10-11, 187 A.2d 78, 80.[2]

Accord *Teschner v. Chicago Title & Trust Co.* (1974), 59 Ill. 2d 452, 456, 322 N.E.2d 54, *appeal dismissed* (1975), 422 U.S. 1002, 45 L. Ed. 2d 666, 95 S. Ct. 2623 ("unless there is fraud, *** interests of minority shareholders can be terminated" through merger).

The Wisconsin Business Corporation Law clearly authorizes three-party mergers by which corporations can eliminate minority shareholders without their approval. (Wis. Stat. Ann. §§180.25(2)(a), 180.62, 180.64 (West Supp. 1987).) Section 180.62(2)(c) provides that when one or more corporations merge into another, shareholders may be required to convert their shares "into cash or other property." (Wis. Stat. Ann. §180.62(2)(c) (West Supp. 1987).) (See *Domain Industries, Inc. v. Thomas* (Wis. App. 1984), 118 Wis. 2d 99, 345 N.W.2d 516 (shares exchanged for cash); *Pearson v. Clam Falls Cooperative*

---

[2]In *Roland International Corp. v. Najjar* (Del. 1979), 407 A.2d 1032, 1036, the Delaware Supreme Court overruled *Stauffer* to the extent that the *Stauffer* opinion permitted a merger under the Delaware "short-form" merger statute for the sole purpose of "freezing out" minority shareholders without a valid business purpose. Less than four years later, however, in *Weinberger v. UOP, Inc.* (Del. 1983), 457 A.2d 701, 715, the court retreated from this position, overruled *Roland International* and abandoned the business-purpose requirement.

*Dairy Association* (1943), 243 Wis. 369, 10 N.W.2d 132 (shares exchanged for stock in the newly formed corporation).) Thus, CMREC was expressly authorized to eliminate plaintiffs' shares by converting them "into cash."[3]

■ Plaintiffs, however, argue that the merger between CMCREC and CMCRE was improper because its essential purpose was to eliminate minority shareholders. Although the proxy materials indicate otherwise, the United States Court of Appeals for the Seventh Circuit has held that under Wisconsin law, even if the sole purpose of a merger is to eliminate minority shareholders, this does not make the merger itself improper. (*Kademian v. Ladish Co.* (7th Cir. 1986), 792 F.2d 614, 629-30.) The court held that in the absence of fraud or other illegality occurring prior to the merger, the appraisal provision of the Wisconsin Business Corporation Law (Wis. Stat. Ann. §180.72 (West Supp. 1987)) provides the exclusive remedy for minority shareholders who claim that a merger was effectuated without corporate purpose and with the intent of freezing them out. (*Kademian v. Ladish Co.,* 792 F.2d at 629-30.) Accord *Wilcox v. Stern* (1966), 18 N.Y. 195, 219 N.E.2d 401, 273 N.Y.S.2d 38; *Weinberger v. UOP, Inc.* (Del. 1983), 457 A.2d 701; *Yeager v. Paul Semonin Co.* (Ky. App. 1985), 691 S.W.2d 227.[4]

In the case at bar, a newly formed subsidiary (CMCRE) was created for the express purpose of facilitating a merger. Contrary to plaintiffs' suggestion, there is nothing unusual or improper about such a merger. Courts have routinely approved three-party mergers similar to the one effected in this case which eliminated minority shareholders. See *Broenen v. Beaunit Corp.* (7th Cir. 1970), 440 F.2d 1244, 1250; *Grimes v. Donaldson, Lufkin & Jenrette, Inc.* (N.D. Fla. 1974), 392 F. Supp. 1393, 1403, *aff'd* (5th Cir. 1975), 521 F.2d 812 (and cases cited therein).

■ Plaintiffs conceded at oral argument that absent factual alle-

[3]Plaintiffs argued below and in their brief that the Wisconsin Business Corporation Law (Wis. Stat. Ann. §180.01 *et seq.* (West Supp. 1987)) does not apply to the merger of two Wisconsin railroad corporations (CMC Real Estate Corporation and CMCRE Merger Corporation). Plaintiffs therefore conclude that they had no remedy under the appraisal provision of that law. (Wis. Stat. Ann. §180.72 (West Supp. 1987).) We believe that this contention is foreclosed by plaintiffs' admissions in their complaint and at oral argument that the Business Corporation Law does apply to the merger in this case. *Hulse v. Kirk* (1975), 28 Ill. App. 3d 839, 846, 329 N.E.2d 286.

[4]Shareholders who fail to avail themselves of their appraisal rights "shall be bound by the terms of the proposed corporate action." Wis. Stat. Ann. §180.72(2) (West Supp. 1987). See *De St. Aubin v. Johnson* (1986), 151 Ill. App. 3d 184, 189, 502 N.E.2d 360 (applying Wisconsin law).

gations of fraud or other illegality, statutory appraisal provided them with their exclusive remedy.[5] They maintain, however, that they have properly pleaded fraud and cite the Seventh Circuit's opinion in *Kademian v. Ladish Co.* (7th Cir. 1986), 792 F.2d 614, in support of their argument. In our judgment, plaintiffs' reliance on *Kademian* is misplaced.

In *Kademian,* minority shareholders alleged that the controlling shareholders had concealed bids to purchase the corporation and had fraudulently depressed the value of the corporation's stock to maintain their control over the company and to minimize their potential estate tax liability. To earn a better rate of return on their stock, certain minority shareholders, who were also company vice-presidents, located a merger partner for their company. The president and chairman of the board of directors, however, misrepresented the terms of the merger proposal to his board of directors and warned the proposed merger partner that any purchase of the corporation's stock would be considered an unfriendly act. He also tried to discourage the minority shareholders from seeking offers for their stock. The merger partner, however, was not deterred and subsequently acquired approximately 5% of the outstanding shares in the company, paying up to $2,000 per share, a price 20 times higher than the "predetermined" price set by the president.

The president then decided to pursue merger negotiations with another company "in order to short-circuit a complete unraveling of the details of his prior stock manipulations and still maintain control over" his company. The controlling shareholders committed to sell their shares in a "lockup" merger with the second partner for the equivalent of $2,100 per share. Although the first merger partner ultimately increased its offer to $3,200 per share, the defendants effectuated a merger at $2,100 per share with the second partner. According to the minority shareholders, the proxy statement issued in anticipation of the shareholders' meeting where the merger was approved omitted or misrepresented material facts regarding the corporation's finances, the value of the stock, the president's manipulation of the stock and the background of the merger negotiations. 792 F.2d at 617-19.

Plaintiffs brought an action in Federal court challenging this conduct. In response, defendants argued that appraisal under the Wisconsin Business Corporation Law (Wis. Stat. Ann. §180.72 (West Supp.

---

[5]At oral argument, plaintiffs also admitted that neither they nor any of the parties they seek to represent exercised their appraisal rights.

1987)) was plaintiffs' exclusive remedy. Defendants emphasized the statutory language that a shareholder who fails to avail himself of his appraisal rights "shall be bound by the terms of the proposed corporate action." (Wis. Stat. Ann. §180.72(2) (West Supp. 1987).) The court of appeals stated that the issue on appeal was "whether this phrase means merely that a shareholder cannot be heard to complain that the transaction was not fair to him or whether it means that he is also bound when the proposed corporate action is fraudulent." *Kademian*, 792 F.2d at 629 n.15.

The court held that "in the usual case, a shareholder is bound by a corporate action, with only a right to claim the fair value of his shares [in an appraisal proceeding]. Even if he believes the action to be unwise or unfair, appraisal protects him from pecuniary loss and he should not be allowed to frustrate the majority's goal by second-guessing its business judgment." (792 F.2d at 630.) The court cautioned, however, that "the prospect that all shareholders will be paid off does not justify the corporation or its officers in acting unlawfully," and held that "[t]he appraisal remedy cannot substitute for a suit for breach of fiduciary duty or other torts." (792 F.2d at 630.) The court found that plaintiffs had stated a cause of action for breach of fiduciary duty based on the specific factual allegations of fraudulent premerger conduct, self-dealing and personal gain. 792 F.2d at 629-30.

Unlike the complaint in *Kademian*, the complaint in the case at bar contains no specific allegations of fraudulent or illegal conduct. Plaintiffs do not allege that there were any material omissions or misrepresentations of fact in the proxy materials or elsewhere. Rather, plaintiffs merely allege that they were offered an inadequate price for their shares. However, inadequacy of price, in and of itself, does not constitute fraud or illegality. 792 F.2d at 630. Accord *Ziskin v. Thrall Car Manufacturing Co.* (1982), 106 Ill. App. 3d 482, 485-88, 435 N.E.2d 1277 (construing similar Iowa appraisal statute).

■ The only act upon which plaintiffs base their claim of fraud is defendants' vote in favor of the merger. However, we have held that the merger was authorized by Wisconsin law. In view of this holding and because the proxy materials expressly disclosed CMC's intent to vote its shares to approve the merger, we do not believe that voting in favor of the merger can be construed as fraudulent. Where defendants exercised their rights under the Wisconsin Business Corporation Law and "complied with all statutory provisions," it cannot be said that there was anything "unauthorized and wrongful" about defendants' actions. *De St. Aubin v. Johnson* (1986), 151 Ill. App. 3d 184, 188, 502 N.E.2d 360 (applying Wisconsin law).

■ Finally, plaintiffs contend that the appraisal remedy is inadequate because there is no established market for shares in CMCREC; CMCREC has paid no dividends for 20 years; CMCREC "does not engage in business in the ordinary sense" but is "a custodian corporation" which basically holds substantial assets for sale; the value of property owned by CMCREC (principally timberlands and vacant industrial sites) is not readily ascertainable; the value of CMCREC's net loss carry forward is uncertain; and the costs to an individual shareholder of obtaining appraisals would be "insurmountable."

Admittedly, establishing the "fair value" of plaintiffs' shares in a statutory appraisal proceeding might have been difficult, but that difficulty relates to the nature of plaintiffs' claim, not to the forum in which it happens to be heard. Moreover, plaintiffs conceded at oral argument that all relevant evidence regarding the value of their shares could have been considered in an appraisal proceeding and we note that the appraisal statute confers discretion upon the court to award interest, costs and expenses, including reasonable expert appraisal fees,[6] to the objecting shareholders. See *Domain Industries, Inc. v. Thomas* (Wis. App. 1984), 118 Wis. 2d 99, 345 N.E.2d 516 (where an award of $21,598 in minority shareholders' expert fees was upheld even though those fees were more than twice the amount of the court's award for the difference between the corporation's offer and the fair value of the shares owned by the minority shareholders).

■ Although attorney fees are not recoverable under the Wisconsin appraisal statute (See *Domain Industries, Inc. v. Thomas* (Wis. App. 1984), 118 Wis. 2d 99, 345 N.E.2d 516), we are aware of no authority that the unavailability of attorney fees renders a statutory appraisal remedy inadequate. Moreover, contrary to plaintiffs' suggestion at oral argument, we note that the statute provides for *one* special proceeding to which *all* objecting shareholders "shall be made parties" (Wis. Stat. Ann. §180.72(6) (West Supp. 1987)), and we see nothing in the statute which precludes their joint representation. In our judgment, plaintiffs have not shown that the appraisal remedy was inadequate.

For the foregoing reasons, we conclude that plaintiffs' complaint was barred by the exclusive remedy provision of the Wisconsin ap-

---

[6]Under the statute, "if the fair value of shares as determined materially exceeds the amount which the corporation offered to pay therefor, *** the court in its discretion may award to any shareholder who is a party to the proceeding such sum as the court may determine to be reasonable compensation to any expert or experts employed by the shareholder in the proceeding." Wis. Stat. Ann. §180.72(8) (West Supp. 1987).

praisal statute and was properly dismissed. In light of this determination, we need not consider the trial court's alternative ruling dismissing plaintiffs' complaint on the ground of *forum non conveniens*.

Order affirmed.

LORENZ, P.J., and MURRAY, J., concur.