[No. B099197. Second Dist., Div. Five. Feb. 10, 1997.]

HOWARD J. ROBBINS et al., Plaintiffs and Appellants, v.
MAXWELL M. BLECHER et al., Defendants and Respondents.

**COUNSEL**

Robert S. Gerstein for Plaintiffs and Appellants.

Blecher & Collins, John E. Andrews, Horvitz & Levy, Ellis J. Horvitz, Mitchell C. Tilner, Elizabeth Skorcz Anthony, Wilner, Klein & Siegel, Samuel Wilner and Edward E. Wallace for Defendants and Respondents.

**OPINION**

**GRIGNON, J.**—In this malicious prosecution action, plaintiffs and appellants Howard J. Robbins and the Howard J. Robbins Family Trust of 1989

(collectively Robbins) appeal from a judgment of dismissal following the sustaining of demurrers in favor of defendants and respondents James Sessions and Sessions Tank Liners, Inc. (collectively Sessions) and Sessions's counsel, Blecher & Collins, Maxwell M. Blecher and Donald R. Pepperman (collectively Attorneys). Sessions brought an alter ego action against Robbins to enforce a judgment it had obtained against Robbins's corporation. When the judgment against the corporation was reversed on appeal, Sessions dismissed the alter ego action. The sole issue presented on appeal is whether the voluntary dismissal of the alter ego action constituted a favorable termination on the merits. We conclude that when an action brought to enforce a judgment is voluntarily dismissed after reversal on appeal of the underlying judgment, the voluntary dismissal does not constitute a favorable termination on the merits. We affirm.

FACTS AND PROCEDURAL BACKGROUND[1]

The material facts are undisputed. In 1984, Sessions, represented by Attorneys, brought a federal antitrust action against Joor Manufacturing, Inc. Robbins was the sole shareholder, president and a director of Joor. His conduct on behalf of Joor was the basis of the antitrust action; however, he was not named as a defendant. The district court entered summary judgment in favor of Joor. In 1987, the judgment was affirmed in part and reversed in part by the Ninth Circuit. (*Sessions Tank Liners, Inc.* v. *Joor Mfg., Inc.* (9th Cir. 1987) 827 F.2d 458, 469.) The United States Supreme Court granted certiorari, vacated the Ninth Circuit's decision and remanded the matter to the Ninth Circuit. (*Sessions Tank Liners, Inc.* v. *Joor Mfg., Inc.* (1988) 487 U.S. 1213 [108 S.Ct. 2862, 101 L.Ed.2d 899].) The Ninth Circuit remanded the matter to the district court. (*Sessions Tank Liners, Inc.* v. *Joor Mfg., Inc.* (9th Cir. 1988) 852 F.2d 484, 484-485.) After a trial, on December 11, 1991, the district court entered judgment in favor of Sessions and against Joor in an amount in excess of $4.3 million. (*Sessions Tank Liners, Inc.* v. *Joor Mfg., Inc.* (C.D.Cal. 1991) 786 F.Supp. 1518, 1536.)

Joor appealed. Joor did not have sufficient funds to pay the judgment or post a supersedeas bond; it filed for bankruptcy in order to stay enforcement of the judgment. On January 27, 1992, Sessions, again represented by Attorneys, filed a federal declaratory relief action against Robbins seeking a declaration that Robbins was the alter ego of Joor and, therefore, liable for the judgment in the antitrust case. Sessions asserted that Joor's assets had been distributed to Robbins in order to render Joor judgment proof.

On February 25, 1994, the Ninth Circuit resolved the antitrust appeal in Joor's favor, reversing the judgment. (*Sessions Tank Liners, Inc.* v. *Joor*

---

[1]We have taken judicial notice of the relevant pleadings and opinions in the underlying actions.

*Mfg., Inc.* (9th Cir. 1994) 17 F.3d 295.) Sessions filed a petition for writ of certiorari with the United States Supreme Court. Acknowledging that there could be no alter ego action without a judgment in the antitrust action, Sessions moved to continue the trial in the alter ego action until final resolution by the United States Supreme Court. Joor opposed the continuance motion, suggesting a dismissal without prejudice as the proper course of action. Instead, on April 15, 1994, the district court ordered the alter ego action "closed administratively subject to re-opening."

On October 3, 1994, the United States Supreme Court denied certiorari in the antitrust action. On October 20, 1994, Sessions moved to voluntarily dismiss the alter ego action with prejudice on the ground that the case had become moot. Robbins agreed the case should be dismissed as moot, but argued he was entitled to costs as the prevailing party. On December 5, 1994, the district court granted the dismissal and ordered the parties to bear their own costs.

On May 31, 1995, Robbins filed the instant malicious prosecution action against Sessions and Attorneys for pursuing the alter ego action. Robbins's first amended complaint, filed July 18, 1995, is the operative pleading. It alleges Sessions and Attorneys pursued the alter ego action maliciously and without probable cause. It alleges favorable termination of the alter ego action by Sessions's voluntary dismissal, in that the merits of the alter ego action depended on the merits of the antitrust action and the reversal of the antitrust judgment therefore mandated Sessions's dismissal of the alter ego action on the merits.

Sessions and Attorneys demurred to the complaint on the ground it did not and could not sufficiently allege the element of favorable termination. The trial court sustained the demurrer without leave to amend.

An order of dismissal was filed October 26, 1995. Robbins appealed.[2]

## Discussion

*Standard of Review*

■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as

---

[2]The order of dismissal was filed on October 26, 1995. Robbins filed a notice of appeal on December 26, 1995. The order of dismissal erroneously omitted the name of one of the defendants, and a motion to amend the order was granted on December 28, 1995. An amended order of dismissal was filed March 14, 1996. Robbins filed a second notice of appeal on June 7, 1996. On June 25, 1996, we consolidated the two appeals.

admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

*Alter Ego*

■ "Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors. Under the alter ego doctrine, however, where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation. [Citations.] [¶] In general, the two requirements for applying the alter ego doctrine are that (1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice. [Citations.] The doctrine is applicable where some innocent party attacks the corporate form as an injury to that party's interests. The issue is not so much whether the corporate entity should be disregarded for all purposes or whether its very purpose was to defraud the innocent party, as it is whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form. [Citations.]" (*Communist Party* v. *522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 993 [41 Cal.Rptr.2d 618].)

*Malicious Prosecution*

We revisit the law concerning the favorable termination element of malicious prosecution, which we outlined in *Eells* v. *Rosenblum* (1995) 36 Cal.App.4th 1848 [43 Cal.Rptr.2d 323].

■ " '[I]n order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate "that the

prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." ' [Citations.] In this case, we are concerned with only the favorable termination element of malicious prosecution.

■ " ' "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution]." [Citations.] [¶] It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits. However, termination must *reflect* on the merits of the underlying action. [¶] It is apparent "favorable" termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.' ([Citation], italics in original, fn. omitted.)

■ "The key is whether the termination reflects on the underlying defendant's innocence. [Citations.] If the resolution of the underlying litigation 'leaves some doubt as to the defendant's innocence or liability[, it] is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff.' ([Citation], italics in original.) ' "A termination [by dismissal] is favorable when it reflects 'the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant.' " [Citation.] [¶] . . . The focus is not on the malicious prosecution plaintiff's opinion of his *innocence*, but on the opinion of the dismissing party.' ([Citation], italics in original.) 'The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt.' [Citations.]

"A voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action and may constitute a decision on the merits. [Citations.] 'It is not enough, however, merely to show that the proceeding was dismissed.' [Citation.] The reasons for the dismissal of the action must be examined to determine whether the termination reflected on the merits." (*Eells* v. *Rosenblum, supra,* 36 Cal.App.4th at pp. 1854-1855; *Camarena* v.

*Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1099-1100 [235 Cal.Rptr. 820].) A voluntary dismissal on technical grounds, such as lack of jurisdiction, laches, the statute of limitations or prematurity, does not constitute a favorable termination because it does not reflect on the substantive merits of the underlying claim. (*Eells* v. *Rosenblum, supra,* 36 Cal.App.4th at pp. 1855-1856; *Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 882 [6 Cal.Rptr.2d 151]; *Sierra Club* v. *Superior Court* (1985) 168 Cal.App.3d 1138, 1144 [214 Cal.Rptr. 740]; *Stanley* v. *Superior Court* (1982) 130 Cal.App.3d 460, 465 [181 Cal.Rptr. 878].)

*Voluntary Dismissal of Sessions's Alter Ego Action Against Robbins*

■ The sole issue presented in this appeal is whether Sessions's voluntary dismissal of the alter ego action against Robbins constituted a favorable termination on the merits for purposes of malicious prosecution. Robbins contends that the termination was on the merits, in that the "promotion of injustice" element of a cause of action for alter ego could not be proven after the antitrust judgment had been reversed on appeal. Sessions and Attorneys respond that the reversal of the antitrust judgment merely mooted the alter ego action, and the subsequent dismissal did not reflect on the merits of the alter ego action.

In this case, there is no dispute as to the reason for the voluntary dismissal of the alter ego action by Sessions. The alter ego action was dismissed by Sessions because it was no longer viable once the underlying antitrust judgment had been reversed on appeal. The question presented is whether the voluntary dismissal for this reason reflected on the innocence of Robbins. We conclude that it did not. The dismissal of the alter ego action did not reflect Sessions's opinion of whether Robbins was *in fact* an alter ego of Joor, or whether Joor was *in fact* transferring assets to Robbins so as to render itself judgment proof. Rather, the dismissal reflected only that, although Sessions had possessed a judgment against Joor when it had filed the alter ego action, it no longer possessed that judgment. As an entity which was no longer a judgment creditor of Joor, Sessions had simply lost standing to pursue Joor's alter egos. Sessions's voluntary dismissal was not a concession that Joor and Robbins had done nothing wrong, but merely a concession that it was no longer in a position to complain of their wrongdoing. This concession does not reflect on the merits of the alter ego action, but only on its mootness.[3]

Robbins, however, argues that an alter ego action has two elements, the unity of interest element and the promotion of injustice element. Robbins

---

[3]The fact that the alter ego action was mooted by the reversal of the antitrust judgment in no way implies the alter ego action was premature. Joor had not obtained a supersedeas bond; the antitrust judgment was not stayed pending appeal. (Fed. Rules Civ.Proc., rule 62(d).) Only

contends that Sessions dismissed the alter ego action because, without the antitrust judgment, it could not prove the second element of an alter ego action, the promotion of injustice. Therefore, Robbins asserts, the dismissal constituted an admission that Sessions could not prevail on the merits of its action and was thus a favorable termination on the merits. In our view, Robbins confuses the elements of the action with the procedural prerequisites to asserting them. Sessions sought to establish in the alter ego action that Robbins was the alter ego of Joor, the corporate veil should be pierced and Robbins should be liable for Joor's debts, namely the antitrust judgment. Sessions's dismissal, based solely on the reversal of the antitrust judgment, conceded neither that Robbins was not the alter ego of Joor, nor that Joor had not improperly transferred assets to avoid payment of the judgment. Sessions conceded only that it was no longer in a position to assert these claims.[4]

■■■ As such, the voluntary dismissal was not inconsistent with the guilt of Robbins and, therefore, did not constitute a favorable termination on the merits.[5] The demurrer was properly sustained without leave to amend.

### DISPOSITION

The judgment is affirmed. Robbins is to pay Sessions's and Attorneys' costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied March 12, 1997, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 28, 1997.

---

enforcement of the judgment against Joor was stayed by Joor's bankruptcy. Sessions was therefore free to take advantage of the judgment as against Robbins. In any event, prematurity is a technical defect not reflecting on the merits. (*Eells* v. *Rosenblum, supra,* 36 Cal.App.4th 1848, 1856.)

[4] A party subject to a valid federal court judgment acts improperly if it fraudulently transfers assets in order to avoid that judgment, even if the appeals process subsequently reverses the judgment. (Cf. Civ. Code, § 3439.04.) The reversal of the underlying judgment does not retroactively legitimize the fraudulent transfers, it simply renders them not actionable.

[5] The district court ordered each party to bear its own costs in the alter ego action. Malicious prosecution actions are disfavored; "the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within [the] first action itself." (*Sheldon Appeal Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 872-873 [254 Cal.Rptr. 336, 765 P.2d 498].)