**STEADFAST INSURANCE COMPANY, INC., Plaintiff,**

v.

**AUTO MARKETING NETWORK, INC. and Imperial Credit Industries, Inc., Defendants.**

No. 97 C 5696.

United States District Court,
N.D. Illinois,
Eastern Division.

April 22, 1998.

Lisa S. Brogan, Michael J. Wagner, Kenneth J. Vanko, Baker & McKensie, Chicago, IL, for Plaintiff.

Allen S. Rugg, Jill A. Byrne, Rock Kutak, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Plaintiff Steadfast Insurance Co. (Steadfast) filed this suit against defendants Auto Marketing Network (AMN) and Imperial Credit Industries (Imperial) seeking a declaratory judgment and damages. Steadfast amended its complaint once, as was its right, after which the defendants each filed a motion to dismiss. Steadfast responded by moving to amend the complaint again, and its response to the motions to dismiss its *first* amended complaint refers only to the allegations of its (proposed) *second* amended complaint.

The defendants have objected to the amendment solely on the grounds of futility, *see* Defs.' Opposition to Pl.'s Mot. for Leave to Amend at 3 n. 4, which means that they do not believe that the proposed complaint can survive the original motions to dismiss. *See Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir.1991). In this situation we think it best to grant Steadfast's motion to amend and then to treat the motions to dismiss as attacking the second amended complaint. *See generally General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir.1997) (noting that a review for futility involves "the same standard of legal sufficiency that applies under Rule 12(b)(6)").

## I. Background

We take the facts from the second amended complaint but set them forth here in summary form; the details will come in the discussion, below. AMN is in the business of purchasing, repackaging, and selling loans which originate from credit-impaired individuals, and it specializes particularly in financing the purchase of new and used motor vehicles. AMN's president and its insurance broker, Uni–Ter Corp., negotiated a "Motor Vehicle Collateral Enhancement Policy" with Steadfast, which insures AMN against losses resulting from loan defaults by individual motor vehicle purchasers. During those negotiations and in the resulting insurance contract itself, AMN made a number of representations and promises about the future course of affairs between itself and Steadfast.

Several years later, after discovering that the default rate on AMN's loans vastly exceeded projections, Steadfast audited AMN and AMN's collection agency. It discovered, *inter alia*, that AMN had made loans to unqualified applicants, failed to compile loan portfolios with appropriate risk profiles, took over and improperly executed the collection duties, and submitted improper claims. Steadfast filed suit against AMN, alleging common law fraud, insurance fraud, and breach of contract, and asking for declaratory judgment. The second amended complaint also names Imperial, which had acquired 100% of AMN's stock several months before the suit was filed.

## II. AMN's Motion to Dismiss

### A. *Common Law Fraud*

AMN first argues that Steadfast's complaint does not state a common law fraud claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). A claim of common law fraud in Illinois requires: (1) a false statement of material fact (2) made by a

party who knew or believed the statement to be untrue (3) for the purpose of inducing another party to act (4) which was made to a party with the right to rely and (5) who actually relied, (6) leading to injury. *See Siegel v. Levy Organization Dev. Co.,* 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (1992).

■ AMN focuses its attack on the first element, a false statement of material fact. It cites *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993), for the proposition that statements of opinion or predictions of future events are not actionable in Illinois, and it correctly points out that many of the allegations in the complaint concern ordinary predictive statements. Steadfast's allegation that during contract negotiations "AMN further represented to Steadfast, in writing, that the 'worst case scenario' default rate for the portfolios ... would be 3 to 3½% per annum" is an example. 2d Am. Compl. ¶ 38. Allegations such as these cannot justify a claim of common law fraud. *See, e.g., Ziskin v. Thrall Car Mfg. Co.,* 106 Ill.App.3d 482, 62 Ill.Dec. 255, 435 N.E.2d 1227, 1231 (1982) (representation of future profitability); *Meyer,* 10 F.3d at 1299.

■ Illinois law also generally bars recovery for "promissory fraud," the situation in which A induces B to rely on a promise which A has no intention of keeping, *see, e.g., Roda v. Berko,* 401 Ill. 335, 81 N.E.2d 912, 915 (1948); *Mitchell v. Norman James Constr. Co., Inc.,* 291 Ill.App.3d 927, 225 Ill. Dec. 881, 684 N.E.2d 872, 883 (1997), and the complaint alleges a number of such promises. Steadfast argues, however, that those allegations state a claim under the "scheme exception" to the ban on promissory fraud claims, which requires that the false statement itself be "the scheme or device to accomplish the fraud." *See Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir.1992). We recognize, of course, that this exception will apply to most promises and is therefore so broad that it mostly emasculates the general rule, *see Vance Pearson, Inc. v. Alexander,* 86 Ill.App.3d 1105, 42 Ill.Dec. 204, 408 N.E.2d 782, 787 (1980), but as that merely tends to bring Illinois into conformity with the majority American rule (i.e. misstatement of a present intention is a misrepresentation of a material

fact), *see id.* 408 N.E.2d at 786, it is not a cause for much concern.

The Seventh Circuit, in an attempt to give some meaning to the "scheme" requirement, held that "promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance." *Desnick v. American Broad. Cos., Inc.,* 44 F.3d 1345, 1354 (7th Cir.1995). Steadfast's complaint competently pleads such a scheme. The complaint alleges a number of fraudulent promises: that AMN would strictly adhere to certain underwriting criteria and would refuse applications which did not meet those criteria, *see* 2d Am. Compl. ¶¶ 15–17, 22; that AMN would act so as to minimize Steadfast's liability, *see id.* ¶ 19; that the insured loan portfolio would contain set percentages of each of three grades of loans, *see id.* ¶ 18; and that AMN would use all reasonable efforts to collect on a loan or repossess the collateral before making a claim with Steadfast, *see id.* ¶¶ 26–27. A fair reading of the complaint is that these promises were false when made and were broken later, *see id.* ¶ 63, and the complaint further alleges that Steadfast reasonably relied on these promises in entering into its contract with AMN, *see id.* ¶ 94, and in paying money not actually due to AMN, *see id.* ¶ 98. The complaint also contains other instances of fraud which seem to form a pattern of deception, including AMN's submission of claims which contained false information and which did not comply with the underwriting criteria, *see id.* ¶ 95; AMN's concealment of the fact that it took over the collection and confiscation duties and failed to properly execute them, *see id.* ¶¶ 64–65; AMN's falsification of an endorsement which raised Steadfast's interest costs, *see id.* ¶ 96; AMN's concealment of its knowledge that some of the car dealers were engaging in fraud, *see id.* ¶ 58; and AMN's improper reduction of the amount of money which it paid to Steadfast after a car had been repossessed, *see id.* ¶ 68.

■ AMN next argues that Steadfast failed to plead its fraud allegations with particularity. *See* Fed. R. Civ. P. 9(b). We

disagree. The complaint is clear as to who made the misrepresentations (AMN, its president, or another entity at AMN's direction), what the statements misrepresented (see the above paragraph), and when the misrepresentations took place (during contract negotiations or in the contract itself). These allegations provide the defendants with " 'a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants,' " which is all that Rule 9(b) requires. *Koulouris v. Estate of Chalmers,* 790 F.Supp. 1372, 1374–75 (N.D.Ill.1992) (quoting *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir.1975)).

### B. Insurance Fraud

■ AMN's second argument is that Steadfast's complaint does not state a claim under 720 ILCS 5/46–5, which authorizes damages against "[a] person who knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of any insurance company by the making of a false claim on a policy of insurance." We disagree. The complaint alleges, with sufficient particularity, that AMN granted loans to applicants who did not meet the underwriting criteria, *see* 2d Am. Compl. ¶¶ 44–45, 47–62 (providing specific examples of such loans), and that AMN made inflated claims while relying on a fake endorsement, *see id.* ¶¶ 72–77. The complaint further alleges that AMN "possessed knowledge that it would not and did not strictly adhere to the AMN Underwriting Criteria and that it intended to issue substandard loans" and "routinely caused Claim Forms to be submitted which contained false and fraudulent information." *Id.* ¶ 63; *see also id.* ¶ 105; FED. R. CIV. P. 9(b) ("knowledge . . . may be averred generally"). These allegations clearly state a claim for insurance fraud.

### C. Breach of Contract and Declaratory Judgment

AMN's sole objection to Steadfast's breach of contract claim (and therefore also to its request for declaratory judgment) is that it constitutes an averment of fraud which must be pled with particularity. The parties dispute this point, but we note that the claim was, in fact, pled with particularity, as the allegations underlying it are a subset of those underlying the common law fraud claim. We refer the parties to our earlier discussion (and rejection) of this argument.

### III. Imperial's Motion to Dismiss

■ Imperial has moved to dismiss Steadfast's complaint on the ground that it does not adequately plead "alter ego" liability.[1] Imperial is incorporated in California, and the parties agree that California law governs this claim. *See United Nat. Records, Inc. v. MCA, Inc.,* 616 F.Supp. 1429, 1431 (N.D.Ill. 1985).

■ Under California law, "the two requirements for applying the alter ego doctrine are that (1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice." *Robbins v. Blecher,* 52 Cal.App.4th 886, 60 Cal.Rptr.2d 815, 818 (1997) (quoting *Communist Party v. 522 Valencia, Inc.,* 35 Cal.App.4th 980, 41 Cal. Rptr.2d 618 (1995)). We have no doubt that Steadfast has competently pleaded the first element. The complaint alleges that Imperial owns all of AMN's stock, 2d Am. Compl. ¶ 80; that Imperial has provided AMN $11.5 million in funding, *see id.;* that Imperial exercises control over AMN's loan portfolios, *see id.* ¶ 87; that "Imperial has assumed responsibility for delivering funds to the auto dealers served by AMN, has taken control over all the loans originated by AMN, and is responsible for pooling and securitizing those loans for sale in the secondary market," *id.* ¶ 88; that "Imperial has taken direct supervisory control over AMN's loan underwriting business," *id.* ¶ 89; that Imperial requires

---

1. Imperial also argues that the complaint does not state a claim against Imperial for breach of contract, common law fraud, or insurance fraud. This mistakes the basis of Steadfast's claim: "A claim against a defendant, based on the alter ego theory, is not a claim for substantive relief, e.g., breach of contract . . ., but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego . . . liable on the obligations of the corporation . . . ." *Hennessey's Tavern, Inc. v. American Air Filter Co., Inc.,* 204 Cal.App.3d 1351, 251 Cal.Rptr. 859, 863 (1988).

AMN to obtain its approval before transacting any business, *see id.* ¶ 91; that Imperial has "absorbed" AMN's finance and bookkeeping departments, *see id.;* that AMN has not held a board of directors meeting since the acquisition, *see id.* ¶ 92; and that a senior vice president of Imperial is now also acting as the chief executive officer of AMN, *see id.* These allegations concern more than "intercorporate connections," *Institute of Veterinary Pathology, Inc. v. California Health Lab., Inc.,* 116 Cal.App.3d 111, 172 Cal.Rptr. 74, 78 (1981), or "broad oversight" by a parent of a subsidiary, *Calvert v. Huckins,* 875 F.Supp. 674, 679 (E.D.Cal.1995). Rather, the gist of the allegations is that Imperial is heavily involved in the internal, day-to-day operations of AMN, and this is exactly what California law requires. *See id.*

Whether Steadfast adequately pleaded the second element is a closer call, though we believe it has. As stated by one California court: "The issue is not so much whether the corporate entity['s] ... very purpose was to defraud the innocent party, as it is whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form." *Robbins,* 60 Cal.Rptr.2d at 818 (quoting *522 Valencia,* 35 Cal.App.4th 980, 41 Cal.Rptr.2d 618). The complaint acknowledges that Imperial acquired AMN long after the fraud began, *see* 2d Am. Compl. ¶¶ 6, 78, but it alleges that Imperial either knew or should have known of AMN's past frauds when it bought AMN's stock (by conducting due diligence before the acquisition, *see id.* ¶¶ 81–83), and of AMN's frauds after the acquisition (through its control over AMN's operations, *see id.* ¶¶ 85–86, 88–89, 91), the latter of which Steadfast believes that Imperial could have prevented, *see, e.g., id.* ¶¶ 85, 102. It further alleges that Imperial "is the ultimate beneficiary of the profits generated on account of the Policy," since it retains the money resulting from its sale of AMN's securitized loans. *See id.* ¶ 86; *see also id.* ¶ 88.

In sum, the complaint alleges with particularity that Imperial knew about the fraud before buying AMN's stock but bought it anyway, that after the acquisition Imperial had the power to stop AMN's frauds but chose instead to reap the rewards, and that

because of the new corporate structure, AMN no longer retains the profits out of which it could pay a judgment. We believe that this is the sort of "bad faith" which the second element requires, *Hennessey's Tavern,* 251 Cal.Rptr. at 862, and we believe that it would be unjust to exempt Imperial from liability under these circumstances, *Doney v. TRW, Inc.,* 33 Cal.App.4th 245, 39 Cal. Rptr.2d 292, 293 (1995); *see also Sea–Land Services, Inc. v. Pepper Source,* 993 F.2d 1309, 1311–12 (7th Cir.1993) (discussing Illinois law's identical two-part veil piercing test and noting that unjust enrichment may be a "wrong" that would justify veil piercing).

## IV. Conclusion

For the foregoing reasons, we deny both motions to dismiss. It is so ordered.