Filed 2/18/16  Bank of Southern California v. D&D Goryoka CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BANK OF SOUTHERN CALIFORNIA, N.A., | D068093 |
| Plaintiff, Cross-defendant and Respondent , | |
| | (Super. Ct. No. 37-2011-00101423-CU-OR-CTL) |
| v. | |
| D&D GORYOKA, LLC et al., | |
| Defendants, Cross-complainants and Appellants. | |


APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Franklin & Franklin and J. David Franklin for Defendants, Cross-complainants and Appellants.

Mulvaney Barry Beatty Linn & Mayers and Everett G. Barry, Jr., John A. Mayers and Christopher B. Ghio for Plaintiff, Cross-defendant and Respondent.

Defendants, cross-complainants and appellants D&D Goryoka, LLC, Ghassan Goryoka, Amir Goryoka, Izik Aziz Goryoka, D&D Goryoka, Inc. and Goryoka, Inc.[1] appeal from a judgment in favor of plaintiff, cross-defendant and respondent Bank of Southern California, N.A. (Bank), on Bank's claims for breach of guaranties and common counts. The trial court had granted summary judgment in Bank's favor on appellants' cross-complaint for fraud, in which appellants alleged Bank induced them to enter into a loan and guaranties by providing a grossly inflated profit and loss projection for purposes of an appraisal of property on which they sought to operate a gas station and convenience store. Following a bench trial on the merits of Bank's complaint, the court entered judgment in Bank's favor against Ghassan, Amir, Izik and GI, finding they were guarantors jointly and severally liable for the deficiency on the loan, and Bank had proved it was owed a deficiency plus interest. The court rejected appellants' defense that the guaranties executed by Ghassan, Amir, Izik and GI were invalid or unenforceable "sham" guaranties.

Appellants contend the trial court erred by granting summary judgment in Bank's favor because the evidence raised triable issues of fact as to whether Bank's representatives honestly believed the value statements in the profit and loss projection or had superior knowledge about the valuation. They ask us to reverse the trial court's order striking their seventh affirmative defense for fraud if we conclude summary judgment

---

[1] We refer to the individual appellants by their first names to avoid confusion. We refer to D&D Goryoka, LLC as LLC, D&D Goryoka, Inc. as DGI, and Goryoka, Inc. as GI.

was improperly granted. Appellants further contend there was insufficient evidence to support the court's finding that Ghassan, Amir, Izik and GI were true guarantors, and thus liable for the deficiency on the loan under California's antideficiency laws. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2007, Bank made an $880,000 loan to LLC as an eligible passive company[2] for DGI, doing business as Yucca Valley Gas & Mini Mart, for the purchase of real property in Yucca Valley, California on which there is a gas station and convenience store (the gas station property or property). The loan was evidenced by a United States Small Business Administration (SBA) note and business loan agreement, and secured by a deed of trust encumbering the property. Ghassan and Amir executed the deed of trust on LLC's behalf. Ghassan, Amir, Izik, DGI and GI (at times collectively guarantors) each executed SBA unconditional guaranties of the loan under which they guaranteed payment of LLC's indebtedness. Each of the guaranties contains a waiver of anti-deficiency protection, which in part states: "This is an unconditional and irrevocable waiver of any rights and defenses the guarantor may have because the debtor's debt is

---

[2] An eligible passive company, which can be in any ownership structure or legal form, may qualify for small business financing if it owns assets used in the conduct of a related active small business. (See 13 C.F.R. § 120.111 (2016).) Under federal regulations governing small business loans, such a company "must use loan proceeds to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), that it leases to one or more Operating Companies for conducting the Operating Company's business." (*Ibid*.) Among other requirements (13 C.F.R. § 120.111(a) (2016)), each holder having at least a 20 percent ownership interest in the eligible passive company and the operating company must guarantee the loan. (13 C.F.R. § 120.111(a)(6) (2016).)

3

secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.

In or about August 2011, LLC defaulted on the note by failing to make the August 2011 payment and subsequent payments. Thereafter Bank made a demand on each of the guarantors for payment of the loan according to the terms of the guaranties.

In November 2011, Bank filed a verified complaint against appellants asserting, inter alia, claims for judicial foreclosure of the deed of trust securing the property, quiet title to the property, possession of personal property on which Bank alleged it had a secured interest and judicial foreclosure to enforce that security interest, breach of the note and the guaranty agreements, appointment of a receiver, and certain common counts. Appellants' verified answer to the complaint alleged numerous affirmative defenses including that the guaranties were unenforceable due to fraud and/or mistake. Appellants alleged that before consummation of the loan documents, Bank presented them with an appraisal that intentionally substantially overstated the gas station property's value, thereby inducing appellants to enter into the guaranties. They alleged that had they known the true value of the property, they would not have entered into the guaranty agreements.

Concurrently with their answer, appellants cross-complained against Bank for fraud in the inducement. Appellants alleged that they had become interested in purchasing the property in 2006 at a negotiated price of $750,000, but when the property owners fell into bankruptcy, the property's price rose to $990,000. They alleged they

4

were arranging financing with Bank in May 2007 but were concerned about overpaying for the property, so Bank hired an appraisal firm to determine the property's market value. According to appellants, then Bank vice-president Gabriele Distler had a profit and loss projection prepared showing $450,000 in monthly gas sales and $50,000 in monthly store sales. Appellants alleged that though Bank was not obligated to do so, Distler and another Bank representative at that time, Dale Smith, informed Ghassan of the results of the appraisal, telling him that the gas station property had been appraised at $720,000 as of June 2007. Appellants alleged that when they informed Distler they were not interested in purchasing the property for $990,000, Distler and Smith informed them that the appraiser had appraised the property at $1,760,000 as of August 1, 2008, after one year of operation. Appellants alleged Distler and Smith repeatedly told Ghassan to proceed with the deal knowing that the information was false because Distler and Smith had created a profit and loss protection that did not use actual sales history of the gas station property under its former owners.

In August 2013, Bank purchased the property at a trustee's sale on a credit bid in the amount of $310,000. Following that sale, Bank elected to proceed only on its cause of action for breach of guaranty and two common counts for money lent and account stated, dismissing its remaining causes of action.

*Bank's Motion for Summary Judgment*

Bank moved for summary judgment or alternatively summary adjudication of issues on appellants' cross-complaint for fraud in the inducement. It argued appellants could not establish the elements of an actionable misrepresentation, justifiable reliance or

5

knowledge of falsity. Specifically, Bank argued that any statement by Distler and Smith about the property's August 2008 value concerned the future value of the market and was not actionable as a matter of law; appellants could not rely on predictions regarding future events, and any reliance was unjustified absent an independent review of both the appraisal and profit and loss projection before closing the loan. Bank further argued appellants could not present evidence that Bank knew the statements were false at the time they were made because they concerned future events. Bank pointed to various assumptions and limiting conditions contained in the appraisal report, including that the income and expense estimates were for purposes of estimating value only; that the prospective value estimates were forecasts subject to considerable risk and uncertainty; and that actual results could materially vary from the estimates. It pointed out that the appraisal report stated it was "prepared for the exclusive benefit of the client . . . [and] may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk." (Some capitalization and emphasis omitted.)

Appellants opposed the motion, submitting declarations from Ghassan and Amir, as well as the declaration of their counsel, J. David Franklin. Asserting Bank's summary judgment motion pointed to their cross-complaint's allegations, they argued that the issues raised by Bank had all been previously rejected by another superior court judge— Judge Gonzalo Curiel—who overruled Bank's demurrer brought on the same grounds. They also relied on authorities holding that an expression of opinion, if not honestly made by the person making it or if made by a person with superior knowledge, could be

6

actionable fraud. Appellants further argued that whether they reasonably relied on Bank's misrepresentations was a question of fact, as the evidence showed they did not receive the appraisal report and see its conditions until after they had entered into the various loan agreements, security agreements and guaranties.

Excluding the Franklin declaration in its entirety,[3] the trial court granted Bank's motion, ruling that statements regarding the appraised value of property are not actionable fraudulent misrepresentations. It relied on this court's opinion in *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, which reasoned in part that because an appraisal is performed in the usual course and scope of a loan process to protect the lender, there was no representation of fact on which a buyer could reasonably rely even if it was foreseeable that the borrower might consider the appraisal in deciding whether to take the loan. The trial court pointed out that appellants were relying on the fact Bank had provided an inflated profit and loss projection to the appraiser, which was not actionable as it was an opinion on a future projection or prediction regarding future events.

---

[3] The trial court excluded attorney Franklin's declaration on grounds it was filed under seal without a motion to seal, and violated rules of court prohibiting parties from filing sealed documents based solely on their stipulation. The court directed the clerk to return his declaration unfiled. Though in their opening brief appellants refer to exhibits attached to Franklin's declaration, appellants do not challenge the court's evidentiary ruling or attempt to demonstrate it abused its discretion in those rulings. (See *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 [applying abuse of discretion standard to court's final rulings on evidentiary objections on a motion for summary judgment].) We therefore disregard Franklin's declaration and its attached exhibits in our review, as well as the other evidence excluded by the trial court. (Code Civ. Proc., § 437c, subd. (c) [court shall consider all evidence set forth in summary judgment papers except that to which objections have been made and sustained].)

*Trial Proceedings*

The matter proceeded to trial on Bank's claim for breach of guaranty and common counts against Ghassan, Amir, Izik, DGI and GI.[4]  At the outset, the court granted appellants' request to file an amended answer to assert what they characterized as affirmative defenses of sham guaranty and the absence of legal separation between LLC and the remaining appellants.

Bank presented testimony from Bank manager Richard Marquez, former Bank employees Distler, Brown and Smith, and appellants Ghassan, Amir and Izik.  Appellants additionally presented testimony from former Bank employees Jason Willman and Gerald Widasky, managing director of the appraisal company Jeff Greenwald, and commercial real estate broker Mary Bier.

In March 2015, the trial court issued its statement of decision based on the testimony and evidence.[5]  In part, the court found Ghassan, Amir, Izik, DGI and GI had

---

[4]     At some point, Bank dismissed with prejudice all of its claims against LLC.

[5]     The statement of decision indicates that following the court's tentative decision, appellants sought a formal statement of decision, which the court directed Bank to prepare.  Appellants objected to the proposed statement of decision and the court considered those objections in a February 2015 hearing.  Appellants do not address the effect, if any, of their objections on our appellate review.  " ' "The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." ' " (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12.)  The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case. (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736-737, fn. 15.)  Appellants do not challenge the sufficiency of the statement of decision on appeal, and have not given us any basis to conclude it did not sufficiently address the ultimate facts and material issues.  We

8

entered into SBA unconditional guaranties in which they guaranteed payment of the LLC's indebtedness to the Bank; the guaranties contained the waiver of rights and defenses set forth above; Bank performed all obligations on its part under the terms of the note, business loan agreement, deed of trust, guaranties and all other documents executed in connection with the loan; LLC breached the terms of the note and Bank made a demand on the guarantors for payment of the loan; and Ghassan, Amir, Izik, DGI and GI admittedly breached the terms of the guaranties. It found no credible evidence supported appellants' sham guaranty defense and that the guaranties were valid and enforceable. Specifically, it found the evidence established LLC's status as the borrower and Ghassan, Amir, and Izik's status as guarantors; LLC adhered to corporate formalities and enjoyed complete legal separation from Ghassan, Amir and Izik; Ghassan and Amir formed LLC for the specific purpose of acquiring and holding title to the property; and there was no evidence Bank subverted the purpose of the antideficiency statute by making a related entity the debtor while relegating the principal obligors to the position of guarantors. It ruled that as guarantors, Ghassan, Amir, Izik and GI were not protected by the antideficiency statute and were jointly and severally liable for any deficiency following the trustee's sale of the property. However, it found evidence to support the sham guaranty defense against DGI, and ruled that DGI was a "true borrower" on the loan because Bank viewed it as a principal obligor under a different name.

---

accordingly imply findings to support the judgment where appropriate. (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

The court entered judgment in Bank's favor jointly and severally against Ghassan, Amir, Izik and GI in the total amount of $602,907.70, which included $488,270.97 in principle and accrued interest. It ordered Bank to recover nothing on its complaint against DGI. The court entered judgment in Bank's favor on appellants' cross-complaint.

Following unsuccessful motions to vacate the judgment and for new trial, appellants filed this appeal from the judgment.

DISCUSSION

I. *The Trial Court Properly Granted Summary Judgment in Bank's Favor on Appellants' Cross-Complaint for Fraud in the Inducement*

A. *Standard of Review*

A defendant is entitled to summary judgment " 'only if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Citation.] To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on defendants' motion. [Citations.] In so doing, we view the evidence in the light most favorable to plaintiffs as the losing parties, resolving evidentiary doubts and ambiguities in their favor.' " (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 605-606; see also *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618 [review is de novo].) This court "consider[s] all the evidence set forth in the moving and opposing papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a

10

necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334-335.)

B.  *Prior Demurrer Ruling*

Appellants repeat their contention below that the trial court should have denied Bank's motion for summary judgment in view of Judge Curiel's prior demurrer ruling. We reject the contention for several reasons.  First, as it was below, the claim is made without cogent legal analysis or citation to authority.  (See Cal. Rules of Court, rule 8.204(a)(1)(B), (C).)  We therefore treat it as waived or abandoned.  (*Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1081; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120.)  "An appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument."  (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873.)

The contention is meritless in any event.  Judge Curiel's prior demurrer ruling concerned the pleadings, and "is not binding on subsequent summary judgment motions." (*Aerojet-General Corp. v. Commercial Union Ins. Co.* (2007) 155 Cal.App.4th 132, 139; see also *Doe v. California Lutheran High School Assn.* (2009) 170 Cal.App.4th 828, 834-835 ["[P]laintiffs argue that the trial court's ruling conflicts with [a prior ruling overruling a demurrer on grounds the school was not a business enterprise under the Unruh Civil Rights Act.]  . . .  However, because the demurrer concerned the pleadings, whereas the motion for summary judgment concerned the evidence, the two rulings were not

11

inconsistent"].)  In short, the fact Judge Curiel found appellants' pleadings sufficient to state a cause of action is immaterial to whether Bank is entitled to summary judgment on appellants' claim for fraud in the inducement.

C.  *Actionable Misrepresentation for Purposes of Fraud in the Inducement*

1.  *Legal Principles*

The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.)  " 'It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.' "  (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 662; *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469.)  And it is settled that expressions of opinion—particularly representations of value that are quintessentially a matter of opinion—are not generally treated as factual representations for purposes of maintaining a fraud claim.  (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 308, 310.)

However, " '[u]nder certain circumstances, expressions of professional opinion are treated as representations of fact.  When a statement, although in the form of an opinion, is "not a casual expression of belief" but "a deliberate affirmation of the matters stated," it

12

may be regarded as a positive assertion of fact. [Citation.] Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact.' " (*Public Employees' Retirement System v. Moody's Investors Service, Inc.*, *supra*, 226 Cal.App.4th at p. 662, quoting *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 408.) Also, "if a person advances an opinion in which he does not honestly or cannot reasonably believe, then an action for affirmative fraud will lie if the remaining elements of the tort are present." (*Cooper v. Jevne* (1976) 56 Cal.App.3d 860, 866; see *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 430.) These exceptions may pertain to an expression of value. (See *Hobart*, at pp. 430-433.)

When there is a reasonable doubt as to whether a particular statement is an expression of an opinion or an affirmation of fact, the determination should rest with the trier of fact. (*Hobart v. Hobart Estate Co.*, *supra*, 26 Cal.2d at p. 431.) On a summary judgment, when a plaintiff raises exceptions to the general rule precluding reliance on an opinion, "it is appropriate to review the evidence to determine if, as a matter of law, summary judgment is appropriate, or conversely if there are disputed factual issues that must be resolved by trial." (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, *supra*, 86 Cal.App.4th at p. 308.)

In *Graham v. Bank of America, N.A.*, this court addressed a complaint's allegations that a bank had made certain representations to the plaintiff concerning the appraised fair

13

market value of a home, the effect of an increasing fair market value as to the security of the purchase and profitable future sale, and whether a loan was "good" for the plaintiff. (*Graham v. Bank of America, N.A.*, *supra*, 236 Cal.App.4th at p. 606.) The plaintiff alleged the statements regarding the appraised value were false because the appraisal was an " 'artificially inflated and engineered rate' " and that the comparable sales on which the appraiser justified the valuation were tainted by industry-wide fraud. (*Ibid.*) On the bank's demurrer, we held the alleged statements concerning appraised value, which encompassed predictions about the home's future value, were not actionable fraudulent misrepresentations. (*Id*. at pp. 606, 607.) In part, we reasoned that "[a]n appraisal is performed in the usual course and scope of the loan process to protect the *lender's* interest to determine if the property provides adequate security for the loan. Since the appraisal is a value opinion performed for the benefit of the lender, there is no representation of fact upon which a buyer may reasonably rely." (*Id*. at p. 607.) Further, we held: " ' "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender. [Citations.]" [Citation.] A commercial lender pursues its own economic interests in lending money.' [Citation.] A loan agreement does not require the lender to protect the success of a borrower's investment. [Citation.] A borrower must rely on his or her own judgment and risk assessment to decide whether to accept a loan." (*Id*. at pp. 607-608.)

    2. *Contentions*

Appellants contend summary judgment was improper because they presented evidence demonstrating that the representations within the profit and loss projection

14

created by Bank employees fall outside the general rule that an opinion is not actionable for purposes of fraud. According to appellants, the evidence shows Bank's profit and loss projection was not an expression of an honest opinion, but was provided by Bank representatives who knew the information was false so as to induce appellants to enter into the loan. In making these arguments, appellants acknowledge our holding in *Graham v. Bank of America, N.A.*, *supra*, 236 Cal.App.4th 594 and those of other courts regarding a buyer's justifiable reliance on an appraisal, but point to the court's statement in *Nymark v. Heart Federal Sav. & Loan Assn.* (1991) 231 Cal.App.3d 1089, suggesting that where an appraisal was intended to induce a person to enter into a loan transaction or to assure the person that his collateral was sound, a lender may act outside its role as a conventional lender. Appellants argue that unlike the situation in *Nymark*, the evidence here shows Bank employees "intentionally created a fraudulent and grossly inflated profit and loss projection which said employees knew would cause the 'going concern' appraisal to be fraudulently inflated in value for the purpose of inducing the Appellants to purchase the real property and to enter into a loan agreement with . . . Bank." They argue Bank would never have relied on the fraudulent appraisal value to ascertain the sufficiency of the collateral as security for the loan.

    3. *Analysis*

    Our role is not to resolve these issues, but to first independently assess Bank's evidence to determine whether it met its "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851; *Dollinger DeAnza Associates v.*

15

*Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144 [appellate court reviews trial court's ruling not its rationale].)  We then look to appellants' showing to decide whether the evidence presents material factual issues for a fact finder at trial.  "[A] party 'cannot avoid summary [adjudication] by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Dollinger DeAnza Associates*, at pp. 1144-1145.)

Here, Bank pointed out that appellants' fraud claim was entirely based on the representations made in connection with the June 2007 appraisal and profit and loss projections about the future 12-month income stream of the gas station and convenience store, and the property's future value after one year of operation.  Bank assumed the truth of appellants' assertion concerning the future August 2008 valuation statement by Distler and Smith, and relied on the general rule that such representations of future value were merely nonactionable opinions on which appellants could not actually or justifiably rely. We agree with Bank.  Our conclusions in *Graham v. Bank of America, N.A.* are apt: the evidence shows the appraisal was prepared for the benefit of Bank as the lender, the other asserted representations are as to future projections and opinions of value, and thus "there is no representation of fact upon which [appellants] may reasonably rely."  (*Graham v. Bank of America, N.A.*, *supra*, 236 Cal.App.4th at p. 607.)  We conclude Bank's showing that its representations were future value opinions was sufficient to show the nonexistence of triable issues as to the misrepresentation and justifiable reliance elements of fraud.

16

In opposing Bank's motion for summary judgment, appellants raised the exceptions discussed above as to nonactionable opinions. They argued that the following facts established that Bank representatives knew the profit and loss projection underlying the appraisal was grossly overstated and intended to so overstate the projections to induce them to enter into the loan: (1) the representatives knew the property's prior owners had closed the gas station and store because they could not make a profit and were failed businesses, yet projected a net profit of $396,000 after one year of operation; (2) appellants' actual gasoline and store sales after one year averaged $46,000 and $15,000 per month respectively, substantially less than the Bank's projections, permitting an inference of fraudulent intent; (3) Bank's manager Jocelyn Brown knew appellants had no experience in operating a gas station; (4) Distler had the ability to contact the prior property owners to obtain their financial information, but Bank did not provide any such information to the appraisal firm; (5) Bank declined to give appellants a copy of the written appraisal report until they had signed all of the loan documents; and (6) the amount of projected gross revenue for the gas station and store was exactly $6 million, coincidentally the amount of the gross revenue limit under which Bank could do an SBA loan.

Some of these assertions—namely, Brown's asserted knowledge of appellants' gas station operation experience, Bank's failure to provide the appraisal firm with any of the prior owners' financial information, and the gross revenue limit for an SBA loan—were supported by documents appended to the declaration of attorney Franklin, which, as we have pointed out above (footnote 3, *ante*) was excluded by the trial court in its entirety.

17

We do not consider that evidence in assessing whether appellants demonstrated triable issues of fact concerning Bank's asserted knowledge of the falsity of its value projections.

The remaining asserted facts, according to appellants' opposing separate statement, are supported by the declarations of Amir and Ghassan. However, those declarations do not permit a rational trier of fact to conclude any Bank representative knew its future value projections were false *at the time they were made*, an essential element of fraud. (*West v. JPMorgan Chase Bank*, *supra*, 214 Cal.App.4th at p. 792.) The fact that actual gasoline and store sales one year later were substantially less than Bank's projection cannot establish that Bank representatives knew their projections were false when they made them in or around June of 2007. Nor can such a conclusion be drawn by the asserted fact that Bank did not show Ghassan or Amir the written appraisal report until after they signed the loan and guaranty documents. The evidence shows Bank made both Ghassan and Amir aware of its value projections well before they closed the loan transaction in September 2007; Ghassan averred in his declaration that he had signed Bank's profit and loss projection form on June 11, 2007, and Distler and Smith had informed him of the appraisal results "[w]ithin a day or two" after June 16, 2007, months before the loan transaction closed in September 2007. The fact the same appraisal information, along with its limiting conditions, was not given to appellants in written form before the loan closed is not only inconsequential, but it does not permit a reasonable inference that Bank knew its projections were assertedly false or inflated.

Nothing in the declarations of Ghassan or Amir demonstrates that any Bank representative had the sort of specialized knowledge or expertise in the valuation of gas

18

station or convenience store businesses so as to reflect inequality of knowledge. (Cf. *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, *supra*, 86 Cal.App.4th at pp. 310-311 [testimony that the defendant accountant, who allegedly made misrepresentations in connection with a proposed ice or roller hockey arena project, had experience in securing financing for projects but not in financing of ice or roller hockey rinks, against testimony that plaintiff had a graduate degree in business, worked as a corporate financial analyst, and previously proposed an ice rink project elsewhere, did not establish the accountant's superior knowledge or inequality of knowledge].) Nor is there anything in them showing the representations made as to future value were intended by Bank as affirmations of fact. (Compare, *Gagne v. Bertran* (1954) 43 Cal.2d 481, 484, 488 [defendant test hole driller who had tested plaintiffs' soil and informed them he "did not find any evidence of fill other than on the surface for about 12[] to 16 [inches]" in depth was not an opinion but a "deliberate affirmation of the matters stated"; even if it was an opinion, plaintiffs justifiably relied on it because the defendant held himself out as an expert, and his unequivocal statement implied he knew facts that justified it].) Indeed, appellants do not dispute the fact the appraisal report contains limiting conditions expressly and specifically negating any intent to make such an affirmation.[6] Whether appellants saw or

---

6    The appraisal report states in part: "1. An appraisal is inherently subjective and represents our opinion as to the value of the property appraised. [¶] 2. The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events. [¶] . . . [¶] 12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results. [¶] . . . [¶] 17. The analyses contained in the report necessarily incorporate numerous estimates and

read those limiting conditions before closing the loan transaction is not relevant to Bank's intent or lack thereof, or the nature of its assertions. We conclude summary judgment was properly granted on plaintiffs' cross-complaint for fraud in the inducement.

## II. *Sufficiency of the Evidence of Sham Guaranty Defense*

### 1. *Standard of Review*

" ' "In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' [Citation.] In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment." ' " (*Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.) "However, when the [trial court's findings of] decisive facts are undisputed, the reviewing court is confronted with a question of law and is not bound

---

assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during the period covered by our analysis will vary from our estimates, and the variations may be material. [¶] . . . [¶] 19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk. [¶] . . . [¶] 27. All prospective value estimates presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty."

20

by the findings of the trial court. [Citation.] In other words, the appellate court is not bound by a trial court's interpretation of the law based on undisputed facts, but rather is free to draw its own conclusion of law." (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.)

2. *Legal Principles*

Our Division Three colleagues summarized the relevant principles relating to California's antideficiency legislation (Code Civ. Proc., §§ 580a-580d, 726) and the sham guaranty defense in *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625: " 'The courts have repeatedly recognized that the antideficiency laws embodied in [Code of Civil Procedure] sections 580a through 580d and 726 reflect a legislative policy that strictly limits the right to recover deficiency judgments for the amount the debt exceeds the value of the security.' [Citation.] Indeed, these provisions, 'enacted during the Depression, limit or prohibit lenders from obtaining personal judgments against borrowers where the lender's sale of real property security produces proceeds insufficient to cover the amount of the debt.' [Citation.] These antideficiency statutes 'bar[ ] a deficiency judgment following nonjudicial foreclosure of real property [citation] or following foreclosure of a purchase money deed of trust on a residence [citation].' [Citation.] [¶] . . . Because the antideficiency legislation was established for a public purpose '[t]he debtor cannot be compelled to waive the antideficiency protections in advance . . . and [the protections] cannot be contravened by a private agreement.' " (*California Bank & Trust v. Lawlor*, at p. 632.)

21

" 'To be subject to a deficiency judgment, however, a guarantor must be a true guarantor, not merely the principal obligor under a different name. [Citations.] Indeed, Civil Code section 2787 defines a guarantor as 'one who promises to answer for the debt, default, or miscarriage *of another* . . . .' [Citations.] Where the principal obligor purports to take on additional liability as a guarantor, the guaranty adds nothing to the principal obligation and the antideficiency legislation bars a deficiency judgment based on the guaranty because it is not a promise to answer for the debt of another." (*California Bank & Trust v. Lawlor*, *supra*, 222 Cal.App.4th at p. 632.)

"To decide whether a guarantor is a true guarantor or merely the principal obligor under a different name, '[t]he correct inquiry set out by the authority is whether the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors. [Citation.] . . . [T]he legislative purpose of the antideficiency law may not be subverted by attempting to separate the primary obligor's interests by making a related entity the debtor while relegating the true principal obligors to the position of guarantors. [Citation.] [¶] To determine whether the [purported guarantors] as individuals were primary obligors . . . such that their guaranties must be considered ineffective, we . . . look to the purpose and effect of the agreements to determine whether they are attempts to recover deficiencies in violation of [the antideficiency law]. Similarly, . . . we may look to the contract between the parties to find the relationship of these individuals to the entire enterprise.' " (*California Bank & Trust v. Lawlor*, *supra*, 222 Cal.App.4th at p. 633.)

22

More recently, in *CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, the court explained that "California law does not define a sham guaranty, and California courts have yet to enunciate a bright-line test." (*Id*. at p. 784.) Discussing authorities involving varying claims of unenforceable sham guaranties, it distilled the following principles: "A guaranty is an unenforceable sham where the guarantor is the principal obligor on the debt. This is the case where either (1) the guarantor personally executes underlying loan agreements or a deed of trust, or (2) the guarantor is, in reality, the principal obligor under a different name by operation of trust or corporate law or some other applicable legal principle. The legislative purpose against deficiency judgments may not be subverted by use of a borrowing entity with the true principal obligor relegated to the position of guarantor. Thus, courts may find a sham guaranty where a lender structures a transaction to avoid antideficiency protections, even though the borrowing entity is a properly formed corporation that observes the necessary formalities. However, a sham guaranty defense generally will not lie where there is adequate legal separation between the borrower and the guarantor, e.g., through the appropriate use of the corporate form." (*Id*. at pp. 786-787.)

In *CADC*, the court concluded that the record lacked substantial evidence to support the defendants' sham guaranty defense where the individual defendants had decided on the corporate structure and chose to borrow money through an LLC owned by a Washington corporation. (*CADC/RADC Venture 2011-1 LLC v. Bradley*, *supra*, 235 Cal.App.4th at pp. 789-790.) The court held that the guarantors could not disclaim their antideficiency waivers if they decided to borrow through a shell entity and there was

adequate legal protection between the guarantors and borrower: "Where individuals purposefully take advantage of the benefits of borrowing through a corporate entity, they must also assume the risks that come with it."  (*Id*. at p. 792.)

3. *Analysis*

Appellants contend the evidence is insufficient to support the trial court's rejection of their sham guaranty defense, and specifically its statement of decision findings that (1) LLC was the true borrower on the loan; (2) the remaining appellants were guarantors not protected by antideficiency statutes; (3) LLC adhered to corporate formalities and had complete legal separation from the remaining appellants; or (4) Amir and Ghassan formed LLC for the specific purpose of acquiring and holding title to the property. According to appellants, the evidence is "overwhelming" that the guaranties were sham under several theories, including on grounds Distler admitted in a credit memorandum that Ghassan, Amir, Izik and GI were the true borrowers on the loan, Bank was involved in selecting the form of entity that became the primary obligor, and LLC failed to observe the necessary formalities that usually protect owners from corporate liabilities.

In addressing these contentions, we look to the relevant facts supporting the trial court's findings from the evidence in the record and from the trial court's final statement of decision.  (See *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 49-50 [appellate court is not limited to facts or evidence cited in trial court's statement of decision but review extends to the entire record].)  Our review of the briefing compels us to point out that though appellants correctly recite the standard of review, they have not summarized all of the material trial evidence relevant to the trial court's findings and conclusions.

24

(*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713-714 [under the substantial evidence standard, "appellants were required to present and discuss all the evidence, both favorable and unfavorable, and show why it was insufficient"].) Appellants point only to evidence that they claim *supports* different theories as to why their guaranties are unenforceable, ignoring the fact that the court rejected this evidence as not "credible." This includes Ghassan's and Amir's trial testimony concerning communications with Bank personnel. We observe also that appellants cite to deposition transcripts submitted in support of their motion for new trial, without any indication that the trial court considered or admitted those transcripts for purposes of trial. Finally, some of appellants' assertions in their brief are made entirely without supporting references to the record.[7] We disregard such unsupported assertions. (Cal. Rules of Court, rule

---

[7]     For example, in their brief appellants assert: "The credit memorandum was written by . . . Distler, the bank's loan officer. In this credit memorandum, there were many admissions made by Distler that the actual and true borrowers with respect to the $800,000 loan were the Appellants. [¶] Trial Exhibit 38 is the first amendment to Distler's credit memorandum. The purpose of the first amendment was to change the name of the borrower from Ghassan and Amir Goryoka partnership as an [eligible passive investor] to . . . LLC as an [eligible passive investor]. The first amendment was executed on September 18, 2007. Trial Exhibit 39 is the second amendment to Distler's credit memorandum. It was executed on September 27, 2007, the day the $800,000 loan closed. There are multiple admissions by bank employees in Exhibit 39 that the individual Goryokas are the borrowers, and not . . . LLC. These multiple admissions occurred 9 days after the bank had changed the name of the borrower to . . . LLC. Obviously, the name change that occurred in Trial Exhibit 38 did not affect in any way the continued multiple admissions of the bank that the Appellants were the borrowers and not . . . LLC. [¶] The bank sent monthly statements for loan repayment to the address for Appellant [GI] and not to the address for . . . LLC. The evidence showed that the bank knew that the loan payments were being made by Amir . . . from his personal bank account and from the bank account of . . . [GI]." The sole reference to evidence in these statements and arguments are to trial exhibits, but appellants do not provide a record

25

8.204(a)(1)(B) & (C) [appellants must provide record citations and citation to authority]; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [failure to provide record citations waives the issue].)  Appellants do little to assist us in reviewing whether the trial evidence was sufficient or insufficient to support the highly fact-specific sham guaranty defense.

Bank complains about appellants' failure to discuss the evidence on which the court relied and argues they waived their right to substantial evidence review.  It maintains appellants are asking this court to give more weight or credibility to appellants' testimony, which "reveals they were aware of the terms of the Loan."  Bank asserts that "[b]ased on [appellants'] own admissions and testimony at Trial, the Court concluded that their contentions concerning the sham guaranty defense lacked credibility" and as such, the court "largely rejected the evidence offered by Appellants with respect to the sham guaranty defense."

Appellants have indeed forfeited substantial evidence review by failing to set out a fair summary of all the material evidence on the point, but instead citing the evidence in their favor and interpreting it in the light most favorable to them.  (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 52-53; see also *Stewart v. Union Carbide Corp.* (2010)

reference as to where those exhibits are located.  Appellants also assert:  "The bank falsely and fraudulently represented to the SBA that . . . LLC had averaged sales of $718,767 for the past 3 years, when in fact, those sales figures were actually compiled by . . . [GI].  There was never any lease from . . . LLC as the [eligible passive investor] and alleged owner of the . . . real property and . . . [DGI], the Operating Company as required by SBA regulations.  Under such circumstances, . . . Brown stated that SBA requirements were not met and . . . LLC was not eligible for an SBA loan."  These assertions are wholly without record support.

190 Cal.App.4th 23, 34.) Appellants " 'cannot shift this burden onto [Bank],' " nor can it require the reviewing court to " 'undertake an independent examination of the record.' " (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410.)

We are compelled to nevertheless conclude that appellants' sufficiency of the evidence challenge fails on its merits. At trial, Marquez testified that the loan was an SBA term loan, and the business agreement entered into by appellants reflected the responsibilities and obligations between the parties to the lending relationship. That agreement outlined the identity of the borrowers and guarantors, and reflected that the borrower was a validly existing and authorized LLC. Marquez testified that none of the individual Goryokas ever told him they believed the LLC was not the true borrower, or that the individuals were the true borrowers. They never told him that the borrower did not receive the loan funds. Distler testified that the individuals suggested that title to the property be in the name of LLC; Bank did not insist title be vested in LLC because it was strictly against Bank policy to give that kind of advice. Both Distler and Brown, Bank's SBA manager, explained that the loan documents and not initial letters from Bank would control the loan terms and conditions. Distler confirmed that SBA standard operating procedure dictated the required guarantors: DGI was the operating company, GI was a like-kind business, and Ghassan, Amir and Izik were more than 20 percent owners. Distler testified that none of the Goryokas objected to having LLC as the borrower. She testified that the SBA only made loans to businesses, including sole proprietorships, not to individuals.

27

As Bank points out, appellants ignore Ghassan's testimony that LLC was a "real company" formed by the Goryokas' own attorney. Appellants focus on Ghassan's testimony, not believed by the trial court and contradicted by Distler, that Bank representatives told them they needed to form an LLC in order to process the loan. We do not resolve such conflicts in our review for substantial evidence (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 622), we look only to evidence supporting the trial court's factual findings and legal conclusions.

The question is not whether evidence shows that LLC was not the true borrower on the loan or that Ghassan, Amir, Izik and GI were the true guarantors. It is whether the evidence and inferences drawn therefrom demonstrates that appellants were not somehow obligated as primary borrowers. (Compare *Riddle v. Lushing* (1962) 203 Cal.App.2d 831, 832-833 [guaranties were sham where defendants took out loan as partners under a partnership making them primary obligors and also guaranteed the loan as individuals; "[t]he purported guaranty added nothing to the primary liability which arose when they as partners executed the note in the name of the partnership"]; *Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 321 [under trust law principles applicable at the time, husband and wife were primary obligors on a loan along with their family trust, which the court deemed a " 'mere instrumentality' "; appellate court concluded the husband and wife were therefore entitled to the protection of the antideficiency laws].) Here, Distler explained that the loan documents governed, and Bank did not insist LLC be the borrower or title holder. The evidence shows Bank had no involvement in structuring the loan so as to avoid the purpose of antideficiency laws. (Compare *Union*

28

*Bank v. Brummell* (1969) 269 Cal.App.2d 836, 837-838 [lender "advised or required" defendants to transfer title to the property given as security to a preexisting corporation solely owned by the defendants] and *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1423 [evidence created a triable issue of fact where the lender engineered the transaction by requiring the borrower to form a limited partnership with a developer and his corporation as the guarantors; the lender relied exclusively on the financial condition of the developer and corporation because it considered them the true borrowers].)

We reject appellants' assertion that overwhelming evidence compels a conclusion that appellants were the true borrowers because LLC failed to observe necessary corporate formalities, never held annual meetings, did not have a bank account, had no lease agreement with DGI, and never received rent from DGI. Appellants argue it is undisputed that LLC and appellants were alter egos of one another and that appellants were liable for LLC's debts. " '[A]lthough a corporation is usually regarded as an entity separate and distinct from its stockholders, both law and equity will, when necessary to circumvent fraud, protect the rights of third persons and accomplish justice, disregard this distinct existence and treat them as identical.' The issue is not so much whether, for all purposes, the corporation is the 'alter ego' of its stockholders or officers, nor whether the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." (*Kohn v. Kohn* (1950) 95 Cal.App.2d 708, 718; see *Mesler v. Bragg Management Co.* (1985) 39

Cal.3d 290, 300-301; *Webber v. Inland Empire Investments, Inc.* (1999) 74 Cal.App.4th 884, 900; *Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 993-994; see also *Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 892.) " 'Thus, alter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize its corporate status would defeat the rights and equities of *third parties*; *it is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form*.' " (*Webber*, at p. 901, italics added.) The corporate form will be disregarded "only in narrowly defined circumstances and only when the ends of justice so require." (*Mesler*, at pp. 510-511.)

Even if we were to consider the evidence of appellants' disregard of LLC's corporate form, we decline to conclude such disregard should inure to appellants' benefit. Disregard of a corporate entity must benefit a *third party* injured by the corporation, not appellants as the controlling individuals, and thus evidence assertedly supporting application of the alter ego doctrine does not compel us to conclude the record lacks substantial evidence to support the trial court's findings. But there is evidence in any event that permitted the court to conclude appellants properly formed and observed the required formalities in creating LLC, and it was not a mere instrumentality. Ghassan testified he signed articles of organization for LLC, a real company formed by appellants' counsel, which also was the entity on the purchase and sale agreement for the property and took title to it. Ghassan sent the LLC documents, including a certificate of members, to Bank. He testified about the initial meeting of LLC's members, and that its minutes reflected that LLC had agreed to acquire the property for $990,000, and Amir and

30

Ghassan each contributed 50 percent of the capital for escrow. We conclude substantial evidence supports the court's finding that LLC adhered to corporate formalities and enjoyed complete legal separation from Ghassan, Amir and Izik.

### III. *Fraud Affirmative Defense*

Appellants point out that before trial, the trial court struck their seventh affirmative defense of fraud, ruling it was "the same argument or assertions" on which it granted summary judgment on appellants' cross-complaint for fraud in the inducement. They ask that if we reverse the summary judgment and remand for a trial on their cross-complaint, we must likewise reverse the order striking the fraud affirmative defense. Having upheld the summary judgment, we do not disturb the court's ruling.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


McDONALD, J.