Filed 4/14/21  Alliance for College-Ready etc. v. United Teachers L.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| ALLIANCE FOR COLLEGE-READY PUBLIC SCHOOLS INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> UNITED TEACHERS LOS ANGELES, <br><br> Defendant and Respondent. | B301112 <br><br> (Los Angeles County Super. Ct. No. 19STCV06955) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Robert Anthony Escalante; Sheppard, Mullin, Richter & Hampton, Karin Dougan Vogel, Valerie E. Alter, for Plaintiff and Appellant.

Bush Gottlieb, Ira L. Gottlieb, Erica Deutsch, Dexter Rappleye; Altshuler Berzon, Jeffrey B. Demain, Meredith A. Johnson, for Defendant and Respondent.

---

Plaintiff and appellant Alliance for College-Ready Public Schools, Inc. (Alliance), appeals from an order granting a motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] in favor of defendant and respondent United Teachers Los Angeles (the Union) in this malicious prosecution action. The trial court granted the anti-SLAPP motion after finding no evidence that the Union initiated the underlying administrative complaint with malice. On appeal, Alliance contends it established a probability of prevailing on the merits. The Union responds that, in addition to the absence of evidence of malice relied on by the trial court, Alliance cannot prevail because it has not shown a favorable termination of the underlying administrative action.

We conclude this purely legal issue may be raised for the first time on appeal, and we agree that the decision in the underlying administrative action did not establish favorable termination for the purposes of malicious

---

[1] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.) All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

prosecution. The Union's underlying allegations against Alliance were dismissed based on lack of jurisdiction, because Alliance was not a public school employer. The complaint was granted in part, however, against a party affiliated with Alliance based on a finding that the party took retaliatory actions against a teacher. Because Alliance was dismissed on technical grounds, the administrative law judge did not determine whether Alliance was liable for the retaliatory conduct of its agent. Dismissal of the allegations against Alliance did not reflect the opinion of the administrative law judge that Alliance was innocent as to the entire action. As a result, Alliance cannot show the underlying action terminated in its favor as required to establish malicious prosecution. Therefore, we affirm the judgment and dismiss the Union's cross-appeal as moot.

## FACTS AND PROCEDURAL BACKGROUND

### Undisputed Facts

Alliance provides management services to several charter schools within the geographic boundary of the Los Angeles Unified School District (LAUSD). In March 2015, a group of Alliance employees announced an effort to organize support for a union among Alliance teachers and counselors. Alliance sent a letter to its educators on October 27, 2015, containing the following statements, among others: "We remain disheartened by the divisive, dishonest, and

3

disruptive tactics used by [the Union].”; “[The Union] continues to put adult interests over student needs.”; “[The Union] seeks to stifle opposing viewpoints in the unionization debate.”; “[The Union] falsely claims that Alliance has retaliated against one pro-union teacher.”; “Your signature on any document given to you by [the Union], regardless of how the document is represented, could be considered a legally binding signature in support of unionization.”  On October 28, 2015, the principal of one of the charter schools, Alliance Ouchi-O'Donovan 6-12 Complex (Ouchi), sent a letter to faculty and staff containing similar statements.

On October 30, 2015, Alliance sent an email to educators noting that a court order had been issued requiring Alliance to allow Union representatives and union organizers access to all Alliance school campuses after school hours.  The email included the statement, “Alliance staff members are free to speak with [the Union] representatives <u>after</u> regular working hours unless they or the persons they speak with are working or supposed to be working.” (Emphasis in original.)  The email also stated, “[The Union] will be on campus to talk to you about the possibility of organizing Alliance teachers and counselors into its union. [The Union] is not Alliance's union and therefore does not officially represent you or any Alliance teacher or counselor.”

On March 18, 2016, Alliance sent a flyer to its educators stating that the Union's members had approved a 30 percent increase in dues as a result of “a divisive

4

campaign built around a 'Fund the Fight' message attacking public charter schools."  The letter also stated, "This latest campaign continues [the Union's] longstanding and well-documented open hostility to the very existence of public charter schools like Alliance.  Last fall, [Union] President Alex Caputo-Pearl again stated that charter schools 'create a race to the bottom that will hurt all schools and students [and will] dismantle public education.'  The union has spent tens of thousands of dollars on high-powered lobbyists to decimate charter schools."

## Unfair Practice Charge

The Union filed a series of unfair practice charges against Alliance and its affiliated schools with the Public Employment Relations Board (PERB) arising from a variety of conduct.  The unfair practice charge at issue in this case was filed on April 27, 2016, against Alliance and its affiliated school, Alliance Cindy & Bill Simon Technology Academy (Simon Tech) (LA-CE-6130-E) as follows.  The charge alleged that Alliance and its affiliated schools, including Simon Tech, were public school employers within the meaning of the Educational Employment Relations Act (EERA) (Gov. Code, § 3540 et seq.).  Although Alliance has a management services agreement with each of the schools that it operates, Alliance and the individual schools were a single employer within the meaning of the EERA.  Simon Tech retaliated against a teacher who was a public supporter of the union,

5

and Alliance distributed literature to teachers with misleading and coercive statements in violation of section 3543.5, subdivision (a), of the EERA.

The unfair practice charge quoted the statements above, and similar statements, from the two letters sent in October 2015. The Union asserted, "Collectively, these letters contain rhetoric that extends beyond the lawful expression of opinion or communication of existing facts." The charge alleged that the October 30, 2015 email contained the following misstatements: the statement that staff members were free to speak with union representatives after regular working hours, with emphasis on the word "after," was a misstatement, because staff members can speak with a union representative during regular working hours if the staff member is not on duty; that the Union was not Alliance's union; and that the Union did not officially represent any Alliance teacher or counselor.

The Union objected to the following statements in Alliance's March 18, 2016 flyer as mischaracterizations: that union dues increased as a result of a "divisive" campaign, when the increase was approved by over 80 percent of the members; President Caputo-Pearl's "hostility to the very existence of public charter schools,"; and that the Union had spent "tens of thousands of dollars on high-powered lobbyists to decimate charter schools."

The charge described teacher Gina Manning's actions in support of union organization and the adverse actions that she suffered which were alleged to be retaliatory. The

6

charge requested several remedies:  (1) an order requiring Alliance to stop distributing literature with misleading and coercive statements in response to the union organizing campaign; (2) an order requiring Alliance to acknowledge Union representatives who represent educators during meetings that may lead to discipline; (3) an order directing Alliance to offer a teaching position at Simon Tech to the individual teacher involved, and to cease retaliation against the teacher for her exercise of her rights under the EERA; (4) an order directing Alliance to cease and desist from interfering with, restraining, coercing, imposing or threatening to impose reprisals or discriminating against employees because of the exercise of rights under the EERA; (5) an order requiring a live reading to assembled employees by Alliance of the terms of the order and for Alliance to post notices containing the provisions of the order at all Alliance schools and on the Alliance web page; and (6) an email from Alliance providing notice of the provisions of the order to all its employees.  Copies of the October 2015 letters and email, and the March 2016 flyer, were attached to the charge.

PERB's general counsel concluded that the allegations of the charge demonstrated a prima facie case of wrongful interference with employee rights protected by the EERA, and retaliation against an employee for exercising those rights.  On December 12, 2016, PERB prepared and issued a complaint solely against Alliance alleging a claim for unlawful speech based on the four communications identified in the charge and a claim for retaliation.  Rather than

7

identify particular statements or phrases that were alleged to violate the EERA, the complaint included the entire text of Alliance's written communications. In addition, the complaint stated that Alliance, acting through its agent Simon Tech, took adverse actions against a teacher who supported union organization by placing her in a "teacher action plan" program and continuing her participation in the plan on several occasions, initiating an investigation of her, issuing a warning letter on April 8, 2016, and not renewing her employment.

On January 3, 2017, Alliance answered the complaint, denying any violation of the EERA. Alliance asserted the affirmative defense that PERB lacked jurisdiction, because Alliance was not a "public school employer" within the meaning of EERA, section 3540.1, subdivision (k). Instead, Alliance argued that it was an employer as defined under the National Labor Relations Act, 29 U.S.C. section 151 et seq., the National Labor Relations Board had exclusive jurisdiction over Alliance, and the National Labor Relations Act preempted the proceedings against Alliance.

A hearing was held on June 26, 27, 29, and 30, 2017, before an administrative law judge (ALJ). On the first day of the hearing, the Union moved to amend the complaint to include additional factual allegations and to add Simon Tech and Ouchi as respondents. The ALJ denied the motion to add factual allegations, but granted the motion to add the two schools as respondents. An amended complaint was filed. Transcripts were submitted of testimony from several

individuals who testified in other proceedings between the Union and Alliance.

Following the Union's case-in-chief, the respondents moved to dismiss the complaint for failure to establish a prima facie case of interference or retaliation. The ALJ granted the motion with regard to the interference claim, but denied the motion with respect to the retaliation claim. Following post-hearing briefs, the matter was submitted for decision on August 30, 2017.

On December 28, 2017, PERB issued a decision in a different matter, *United Teachers Los Angeles v. Alliance College-Ready Public Schools, et al.* (2017) PERB Decision No. 2545 (*Alliance I*). PERB concluded Alliance did not fall within the statutory definition of a public school employer, and PERB could not assert jurisdiction by finding Alliance to be a "single employer" with an entity over which PERB did have jurisdiction.

The ALJ issued a proposed decision on January 11, 2018. The findings of fact stated that Alliance is a non-profit public benefit corporation affiliated with a network of charter schools within the geographic boundary of LAUSD. Simon Tech and Ouchi are individual charter schools within the network. The individual schools are public school employers within the meaning of the EERA. Alliance has a management services agreement with each school to provide services like payroll, accounting, and curriculum guidance.

Applying the precedent of *Alliance I*, the ALJ found Alliance did not meet the definition of a public school

9

employer under the EERA, and therefore, PERB could not assert jurisdiction over Alliance. The ALJ dismissed the allegations against Alliance on that basis.

In a footnote, the ALJ acknowledged that *Alliance I* allowed individual schools to potentially be held liable for Alliance's conduct under an agency or single employer theory. The ALJ concluded that additional trial proceedings were not necessary, however, because the liability of individual schools for Alliance's conduct was not at issue. The ALJ had already previously found Alliance's communications to staff did not constitute unlawful interference and dismissed the allegations. "The remaining allegation regarding Manning's non-reelection was a local decision made at Simon Tech. Therefore, the issues of whether Alliance was Simon Tech's agent or its schools constituted a single employer are not implicated."[2]

---

[2] Footnote 9 of the ALJ's decision provided in full: "In *Alliance I, supra*, PERB Decision No. 2545, the Board did note that individual schools in Alliance's network could potentially be found liable for Alliance's conduct under an agency theory or a single employer theory where all the schools in the Alliance network constituted a single employer. In this instance, I do not find it necessary to reopen the record or take additional briefing on either theory. During the hearing, I already found that Alliance's October 27, October 30, and March 18 communications (along with Tramble's October 28 letter) did not constitute unlawful interference, and those allegations were dismissed. Whether Alliance was acting as an agent of the Schools or its schools constituted a single employer when it made the

Next, the decision discussed the claim for unlawful speech. In a footnote, the ALJ explained that although the allegations against Alliance must be dismissed for lack of jurisdiction, the decision addressed why Alliance's conduct did not constitute unlawful interference because the unlawful speech allegations had been dismissed during the hearing on this basis and the analysis was pertinent to the discussion of retaliation.

The ALJ determined that the Union had not established a prima facie case for unlawful interference based on the four written communications. After describing the October 27, 2015 letter, the judge concluded, "While the letter uses strong language in setting forth Alliance's opinions, it does not contain a threat of reprisal or promise a benefit and is permissible employer speech." The Union had asserted the October 28, 2015 letter contained misrepresentations that made the letter coercive, but the Union failed to identify any misrepresentations or present evidence to rebut the statements in the letter. The ALJ found both letters contained permissible employer speech and dismissed the allegations.

---

statements would not change the finding that the statements did not violate EERA. The remaining allegation regarding Manning's non-reelection was a local decision made at Simon Tech. Therefore, the issues of whether Alliance was Simon Tech's agent or its schools constituted a single employer are not implicated."

The Union had asserted that the October 30, 2015 email contained misrepresentations that made it coercive, because teachers may speak to union organizers during working hours so long as they are off duty at the time. The ALJ concluded that the statement was permissible speech when viewed in context. It had been written in response to a temporary restraining order issued against the respondents and referred to the trial court's order to allow access to Union representatives during after school hours. It also did not state that teachers cannot meet with Union representatives during working hours. Viewed in its totality, the ALJ determined that the October 30, 2015 email did not contain misrepresentations that would make the email coercive, nor did it contain a threat of reprisal or promise a benefit. Therefore, the allegation was dismissed as to the October 30, 2015 email.

In connection with the March 2018 flyer, the ALJ noted that no evidence had been presented to rebut the statement that dues were increased. The expression of Alliance's opinion was based on factual claims, and the Union did not present evidence to rebut the claims or evidence of its President's views on charter schools, use of funds for lobbyists, and political activities. The Union did not establish a prima facie case for unlawful interference based on the March 2018 flyer and the allegation was dismissed.

The ALJ found the retaliation claim was based solely on conduct by Simon Tech: "The allegation that Manning was retaliated against for engaging in a protected activity

relates only to Simon Tech because [Simon Tech's principal Clarence] Miller was the ultimate decision maker in all of the alleged adverse actions taken against Manning. Although he received guidance from the Home Office, he was not required to comply with those recommendations, and the record reflects principals at Alliance schools are free to disregard the Home Office's recommendations and make their own decisions." The ALJ found that the employee at issue engaged in protected activity under the EERA and Simon Tech knew the employee exercised those rights.

The ALJ made the following findings with respect to the adverse actions that Simon Tech instituted against the teacher after Simon Tech became aware that she had engaged in protected activity. Simon Tech placed the teacher on a performance improvement plan on January 15, 2016, after she had shown improvement under a prior plan. On March 4, 2016, Simon Tech made a recommendation not to renew the teacher's employment contract, which triggered a review of her file by Alliance. After completing its review, Alliance recommended that the teacher be placed on another performance improvement plan instead of non-renewal of her contract. Miller agreed with Alliance's recommendation and did not finalize the March 4, 2016 non-renewal. An investigation was opened on April 1, 2016, based on reports about comments that the teacher made in class. With respect to these adverse actions, the ALJ found the Union failed to establish a prima facie case for retaliation and the allegations were dismissed.

Simon Tech placed the teacher on another performance improvement plan on April 4, 2016. The April 4, 2016 performance improvement plan represented a departure from established procedures. It included more performance directives, and more detailed directives, based on recommendations that Simon Tech received from Alliance. The plan stripped the teacher of her discretion and autonomy as a professional, and made the process more onerous. Miller and the assistant principal of Simon Tech expressed union animus at the meeting with the teacher to inform her of this plan, and observed the teacher more frequently during the course of this plan. In addition to Simon Tech's observation and oversight of the teacher in April 2016, Alliance observed the teacher and provided feedback.

Simon Tech gave the teacher a warning letter dated April 7, 2016, which concluded that the teacher had made inappropriate comments in class. The warning letter also departed from established procedures and showed evidence of a cursory investigation. When the teacher appealed the warning letter, she met with individuals from Simon Tech and Alliance.

Simon Tech recommended non-renewal of the teacher's contract again. Alliance conducted another file review and also recommended non-renewal. A final decision was made on May 13, 2016, not to renew the teacher's employment contract.

The ALJ concluded that the Union established a prima facie case for retaliation based on the April 4, 2016 plan, the April 7, 2016 warning letter, and the May 13, 2016 decision not to renew the teacher's contract, because the decision not to renew the contract was based in part on the adverse actions taken in April. Simon Tech failed to meet its burden to show that it would have issued the April 4, 2016 plan or the April 7, 2016 warning letter in the absence of the teacher's protected activity, although Simon Tech met its burden as to the May 13, 2016 decision not to renew her contract, because there was a sufficient basis for the decision apart from the adverse actions in April.

The ALJ ordered Simon Tech to cease and desist from retaliating against employees for engaging in protected activity. The ALJ also ordered Simon Tech to rescind the April 4, 2016 performance improvement plan and the April 7, 2016 warning letter that were issued in retaliation for engaging in protected activity. In addition, Simon Tech was ordered to post a notice signed by an authorized representative incorporating specific terms that were stated in the order. All other allegations of the complaint were dismissed. The decision became final as of February 7, 2018.

**Malicious Prosecution Complaint**

On February 28, 2019, Alliance filed a complaint for malicious prosecution against the Union. Alliance operates 28 schools within the jurisdiction of the Los Angeles Unified

School District. After the Union announced that it was organizing support to be recognized as the exclusive bargaining representative for staff at the schools, the Union requested a meeting with Alliance's board of directors to discuss a fair and neutral process for organizing. Alliance refused to enter into an agreement. Between April 7, 2015, and June 4, 2018, the Union filed a series of 21 "unfair practice charges" with the PERB against Alliance or its affiliated schools based on a variety of conduct, including allegations that 30 separate written communications violated the Educational Employment Relations Act (EERA). Administrative law judges dismissed the claims. The Union appealed most of the administrative decisions, but did not appeal the claim in the underlying administrative action. The charge was commenced and continued in bad faith, without probable cause, because the Union did not, and could not, reasonably believe there were valid grounds for the action based on the four written communications. Alliance has suffered damages, including attorney fees, costs, expenditures and harm to its reputation. The Union acted with oppression, fraud, malice, and/or without regard to Alliance's rights, so Alliance is entitled to punitive damages as well.

**Anti-SLAPP Proceedings**

On April 3, 2019, the Union filed an anti-SLAPP motion. The Union argued that the unfair practice charge

16

was activity protected by the anti-SLAPP statute, and Alliance could not show a probability of prevailing on the merits. The Union asserted that the unfair practice charge was supported by probable cause. Under the detailed regulatory process for unfair practice charges, a PERB agent must conduct an independent investigation and review the charge to determine whether an unfair practice has been committed. The PERB agent must make a determination whether to dismiss the charge or issue a complaint if the charge or the evidence was sufficient to establish a prima facie case. The Union argued that PERB's decision to issue a complaint was an administrative finding of merit that established probable cause under the "interim adverse judgment" rule. The Union also argued that apart from the PERB decision, the underlying facts and law established probable cause. In addition, Alliance could not prove malice or improper purpose. The Union also argued that PERB had exclusive jurisdiction to determine whether unfair practice charges were justified. Alliance had failed to exhaust the authority vested in PERB to address bad faith litigation.

Alliance filed an opposition to the anti-SLAPP motion. Alliance argued that it was not required to exhaust administrative remedies for bad faith litigation. PERB's complaint processing was not a determination on the merits, because PERB accepted the Union's allegations as true and issued a complaint to resolve disputed facts. Alliance noted the Union had not raised the issue of whether the prior action was pursued to a legal termination favorable to

17

Alliance, and therefore, Alliance addressed the other elements of malicious prosecution. Alliance argued that there was no probable cause for the interference claim, because the Union alleged the communications contained false statements, but failed to submit proof of any misrepresentations. Alliance argued that malice could be inferred from the Union's lack of probable cause.

The Union submit a reply arguing that a prima facie case, as evidenced by issuance of the complaint, was a higher standard than probable cause, and the interim adverse judgment rule applied. In addition, PERB's comprehensive statutory scheme precluded any action for malicious prosecution, especially when Alliance failed to exhaust administrative remedies.

The Union's attorney submitted a declaration from PERB's supervising regional attorney describing the process undertaken at PERB to investigate unfair practice charges and issue complaints when there is a prima facie showing by the charging party of a violation of the public employment labor laws administered by PERB. In addition, the Union provided a copy of the statement that Alliance submitted to PERB urging dismissal of the charge before the complaint was issued.

Alliance filed an objection to the Union's new evidence and the new issues raised in the reply. A hearing was held on July 19, 2019. The Union argued the evidence showed there was probable cause for the underlying administrative complaint. Alliance had admitted all of the factual

allegations related to the communications. There were no allegations of facts in the complaint which required the Union to present evidence at the administrative hearing. No paragraph alleged that a particular statement was a factual misrepresentation. The Union had believed the communications misstated the law. For example, a nonexclusive union may represent an individual employee, and the Union represented some individual employees at Alliance schools for some purposes, so it was a misstatement to say that the Union did not represent any teacher or counselor. The case law defining the standard for unlawful communications interfering with employment rights was continually evolving, not simply determined by whether a threat or promise was made. PERB had consistently held that statements which may not appear unlawful on their face may violate may violate the EERA when considered in context, and the fact that the allegations of the complaint did not track the allegations of the Union's charge showed the independent nature of PERB's investigation. The trial court took the matter under submission.

The trial court granted the anti-SLAPP motion on July 22, 2019. The court found that PERB's preliminary investigation was not an independent investigation into the facts, but a determination of whether the charging document stated a prima facie case. The determination of whether the communications attached to the charge constituted interference required an analysis of factual circumstances surrounding their issuance, such as whether statements

19

constituted mischaracterizations.  The administrative law judge found that the Union presented no evidence of the factual circumstances.  The anti-SLAPP motion could not be granted based on finding the claims had probable cause, either as a result of PERB's preliminary determination or on the substantive merits.  The court found, however, that Alliance had not made a showing of malice.  The fact that the Union had not presented evidence to show the communications were false was insufficient to prove the Union made the allegations with improper motive.  There was no additional evidence of intent, such as a failure to conduct discovery or allegations copied from a prior lawsuit without regard to the underlying facts.  As a result, Alliance failed to meet its burden to show a probability of prevailing, and the anti-SLAPP motion was granted.

Alliance filed a timely notice of appeal.  The Union filed a notice of cross-appeal.

## DISCUSSION

### Anti-SLAPP Statute and Standard of Review

"Courts construe the anti-SLAPP statute broadly to protect the constitutional rights of petition and free speech." (*Anderson v. Geist* (2015) 236 Cal.App.4th 79, 84.) "Resolution of an anti-SLAPP motion involves two steps." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)  In the first step, the moving party must establish that the claim at

issue arises from free speech or petitioning activity protected by section 425.16. (*Ibid*.) The first step is not disputed in this case, because the anti-SLAPP statute applies to malicious prosecution claims. (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 214–215.)

Once the moving party establishes that the claim arises from protected activity, the burden shifts to the opposing party to demonstrate a probability of prevailing on the merits. (*Baral*, *supra*, 1 Cal.5th at p. 384.) This second step has been compared to a "summary-judgment-like procedure." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714; *Baral*, *supra*, 1 Cal.5th at p. 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.]" (*Baral*, *supra*, at pp. 384–385.)

We review an order granting or denying an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) "'We exercise our independent judgment to determine not only whether the anti-SLAPP statute applies, but whether the complainant has established a reasonable probability of prevailing on the merits. [Citation.]' [Citation.]" (*Greco v. Greco* (2016) 2 Cal.App.5th 810, 820.)

21

We review the trial court's decision, not its rationale. "If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307; see also *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 357 [appellate court decides independently whether ruling on anti-SLAPP motion was correct, but need not decide propriety of trial court's reasoning].)

## Malicious Prosecution

Alliance contends that it established a probability of prevailing on the merits of its claim for malicious prosecution. In addition to the grounds raised in the trial court, the Union contends for the first time on appeal that Alliance cannot show favorable termination of the underlying administrative action. In our de novo review of the anti-SLAPP proceedings, we conclude the Union may raise this purely legal issue for the first time on appeal. We agree that the underlying administrative decision did not constitute a favorable termination, because the complaint was dismissed against Alliance on technical grounds and granted in part as to an affiliated party.

## A. Elements and Appealability

"To establish a claim for malicious prosecution, a plaintiff must plead and prove that the prior action: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965–966 (*Zamos*).)" (*Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 353–354; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 676.)

Although the general rule is that issues which were not raised in the trial court cannot be raised for the first time on appeal, appellate courts have discretion to consider a pure question of law on undisputed facts. (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.) In this case, after the Union satisfied the first prong of the anti-SLAPP analysis, the burden shifted to Alliance to show a probability of success on the merits. Regardless of the issues that the Union anticipated in the trial court, Alliance had to present evidence to show that it could prevail on each element of its malicious prosecution claim. The trial court's finding that there was no evidence of malice did not relieve Alliance's burden to show that it can prevail with respect to all of the elements, including the foundational element of a favorable termination on the merits. Favorable termination presents a purely legal issue on undisputed facts, which we may consider for the first time on appeal as part of our de novo review of the anti-SLAPP ruling. Because there was no

adequate showing on the element of favorable termination, we need not consider whether Alliance's evidence of malice met the minimal merit threshold.

## B. No Favorable Termination on the Merits

The Union contends that Alliance failed to show the underlying administrative complaint terminated in its favor on the merits as required to support malicious prosecution. We agree.

"'"'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].' [Citations.] [¶] It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits. However, termination must *reflect* on the merits of the underlying action. [¶] It is apparent 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious

24

prosecution." ([Citation], italics in original, fn. omitted.)'" (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 893 (*Robbins*).)

"'"The key is whether the termination reflects on the underlying defendant's innocence. [Citations.] If the resolution of the underlying litigation "leaves some doubt as to the defendant's innocence or liability[, it] is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff." ([Citation], italics in original.) '"A termination [by dismissal] is favorable when it reflects "the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant."' [Citation.] [¶] . . . The focus is not on the malicious prosecution plaintiff's opinion of his *innocence,* but on the opinion of the dismissing party." ([Citation], italics in original.) "The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt." [Citations.]'" (*Robbins, supra,* 52 Cal.App.4th at p. 893.) "A voluntary dismissal on technical grounds, such as lack of jurisdiction, laches, the statute of limitations or prematurity, does not constitute a favorable termination because it does not reflect on the substantive merits of the underlying claim." (*Id.* at p. 894.)

In addition, there must be a favorable termination of the entire action. (*Crowley v. Katleman, supra,* 8 Cal.4th at

p. 686.)  When the termination is other than by a judgment on the merits, the court examines the record to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed, and if there is a dispute as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact.  (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399.)

The interpretation of a judgment is a question of law for the court.  (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205.)  "In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing.  If the language of the order be in any degree uncertain, then reference may be had to the circumstance surrounding, and the court's intention in the making of the same."  (*Roraback v. Roraback* (1940) 38 Cal.App.2d 592, 596; see *Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 77.)

In this case, the Union brought claims against Alliance for unlawful communications and retaliation, but the ALJ dismissed all of the allegations against Alliance on the technical ground that PERB lacked jurisdiction over Alliance; the dismissal was not a favorable termination on the merits.  The record shows the ALJ also dismissed the unlawful communication allegations against Alliance on the merits as well.  However, the ALJ denied Alliance's motion

26

to dismiss the allegations of retaliation during the hearing and never dismissed the retaliation allegations against Alliance on the merits. In fact, the ALJ found Alliance's affiliated party Simon Tech was liable for two retaliatory acts and ordered several remedies that the Union requested related to retaliation.

Alliance contends that the ALJ found Alliance was not liable for the retaliatory conduct and the issue of agency was irrelevant, because the retaliatory conduct consisted of local decisions by Simon Tech. Alliance's interpretation extends too far. The ALJ concluded it was not necessary to determine whether individual schools could be held liable for Alliance's conduct, because Simon Tech engaged in the retaliatory conduct directly. Alliance's conduct was not at issue, because Alliance was not the ultimate decision maker and Simon Tech was free to disregard Alliance's guidance. However, the ALJ did not dismiss the retaliation allegations against Alliance based on the acts of its agent Simon Tech, and the ALJ did not resolve any issue concerning Alliance's potential liability for Simon Tech's retaliatory conduct. Based on our review of the record, the disposition of the underlying administrative action does not reflect the ALJ's opinion that Alliance was not liable for retaliatory conduct by Simon Tech and could not be held liable in a different forum for Simon Tech's retaliatory conduct on an agency theory. Alliance did not meet its burden to show a favorable termination of the entire administrative action on the merits.

## Cross-Appeal is Moot

In the Union's cross-appeal, the Union contends Alliance failed to submit sufficient evidence on the element of probable cause. As stated above, we review the trial court's ruling, not its rationale. Moreover, in light of our affirmance of the ruling appealed from, the cross-appeal is moot and must be dismissed. (*Jones & Matson v. Hall* (2007) 155 Cal.App.4th 1596, 1611 [protective cross-appeal dismissed as moot upon affirming the rulings appealed from because "only a party who is aggrieved may appeal from a judgment or appealable order"]; *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 546 [dismissing protective cross-appeal as moot upon affirmance of opposing party's appeal], superseded in part by statute on another ground as stated in *United Farm Workers of America v. Dutra Farms* (2000) 83 Cal.App.4th 1146, 1163–1164.)

## DISPOSITION

The judgment is affirmed, and the cross-appeal of respondent United Teachers Los Angeles is dismissed as moot. Respondent United Teachers Los Angeles is awarded its costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

BAKER, J.